[Civ. No. 26813.   Second Dist., Div. Two.   July 1, 1963.]

ORVAL W. NELSON, Plaintiff and Appellant, v. DARREL SPENCE et al., Defendants and Respondents.

John L. Mace for Plaintiff and Appellant.

Barker & Miller and G. Scott Miller for Defendants and Respondents.

FOX, P. J.—In August 1956 plaintiff, who was engaged in the business of packaging and selling fertilizer, entered into a contract with defendants for the purchase of their peat moss business. This agreement provided, *inter alia*: "Sellers [defendants] agree that they will not engage in the business of selling peat, nor sell to any other person or enterprise any peat, during the term of this agreement, and it is agreed that Buyer shall have the right to sell said peat exclusively in any area of the United States. Sellers hereby expressly warrant to Buyer that they have the contractual right to all of the peat produced by said Peter Gambretta [*sic* Gambetta], subject to one minor exception, that they can deliver said peat to Buyer as specified herein, that no other person has any right to sell said peat, and that all of the facts herein stated are true."

In February 1957 plaintiff began selling peat in large quantities to Coast Fertilizer Company. It developed that defendants did not have the exclusive right to sell Gambetta's peat. Relying on this breach of warranty, plaintiff did not make any of the weekly payments called for by the contract except one in January 1957. It also appears that difficulties later arose between plaintiff and his customer, Coast Fertilizer, with respect to asserted adulteration of the peat; the manner of packaging it; and as to how it should be delivered, i.e., whether in bulk or in bags. Because of these difficulties, the defendants stepped into the situation and proceeded to supply Coast Fertilizer with peat, notifying plaintiff that they were supplying Coast Fertilizer peat in bulk and that they would credit plaintiff with his profit on such sales. Thereafter Coast Fertilizer ceased to purchase peat from defendants and bought it directly from Gambetta.

Plaintiff brought an action against defendants for damages for (1) the amount of profits plaintiff lost by reason of defendants' sale of peat to Coast Fertilizer; and (2) for breach

of defendants' warranty that they had the exclusive right to sell Gambetta's peat. The court rendered judgment for $3,053.37 against defendants for the profit that plaintiff would have made on the peat that defendants sold to Coast Fertilizer. It rendered judgment in favor of defendants on plaintiff's cause of action for damages for breach of warranty. Plaintiff appealed from this judgment. The case was decided by this court and is reported in 182 Cal.App.2d 493 [6 Cal.Rptr. 312]. We held that defendants were not entitled to interest on the amount ($3,117.44) awarded to them on their counterclaim[1] because it represented an unliquidated claim, and that they were not entitled to costs since a judgment for the net amount to which they were entitled could have been rendered in an inferior court. In the course of the opinion we said (p. 499): "No finding having been made relative to whether plaintiff has suffered damages for breach of the warranty by defendants of their exclusive right to sell certain peat moss to plaintiff, the cause must be remanded for the taking of further evidence for the purpose of ascertaining such damages, if any." We thereupon reversed the judgment (p. 500) "with directions to the trial court to receive evidence relating to the subject of damages, if any, suffered by plaintiff for breach by defendants of their warranty of their exclusive right to sell peat moss to plaintiff, and to make findings and enter judgment otherwise consistent with the conclusions herein expressed."

Upon a retrial, it was stipulated that the entire record on the previous trial, including the findings of fact, conclusions of law and judgment therein, insofar as they were not in conflict with the opinion of the District Court of Appeal, would be deemed in evidence. It was also stipulated that in the meantime it had been judicially determined that defendants herein did not have an exclusive right to sell the peat produced by Gambetta. No additional evidence pertinent to this appeal was offered on this trial.

After consideration of the record before him, the trial judge made the following finding: "The court now finds that plaintiff did not suffer any damages by reason of the breach by defendants of their warranty of their exclusive right to sell certain peat moss to plaintiff." He then proceeded to render judgment in accordance with the decision of

[1]Defendants filed a counterclaim growing out of the contract of August 1956. This claim included "the reasonable value of the trade name and good will of the business . . ." (p. 499 of 182 Cal.App.2d).

this court.[2]  It is the appeal from this judgment that is now before us.

Plaintiff is here seeking to recover damages for defendants' breach of their warranty that they had the exclusive right to sell Gambetta's peat, which right plaintiff acquired by the purchase of defendants' assets and business; that is to say, plaintiff asserts he is entitled to recover as damages from defendants the profit he would have made on the sales which Gambetta—not defendants—made to Coast Fertilizer. Plaintiff's theory is that had there been no breach of warranty, plaintiff would have made the sales to Coast Fertilizer that Gambetta made to it.

In this connection it is pertinent to note certain findings that were made by the court at the conclusion of the first trial. The court found: "It is true that on March 20, 1957, defendants advised plaintiff that Coast Fertilizer Company had complained to defendants that plaintiff was mixing the peat with a fertilizer known as 'Hugrow' and was slow in making deliveries and was not packaging the peat properly; that Coast Fertilizer had refused to purchase peat from plaintiff in any form except in bulk; that plaintiff admitted mixing peat with 'Hugrow'; that plaintiff refused to sell to Coast Fertilizer Company in bulk; that defendants then told plaintiff that if plaintiff would not handle the sales in bulk, defendants would do so, and would credit plaintiff with the profit . . .

". . . . . . . . . . . .

"It is true that plaintiff ordered no peat from defendants after April 30, 1957, and that plaintiff told defendants that because of difficulties in collections and the cut-rate prices of Coast Fertilizer Company, he was going out of the peat business; . . . that in July 1957, plaintiff commenced buying peat from Morongo Peat Company and that during the period from April 30, 1957, to July 1957 plaintiff had on hand sufficient peat to meet his requirements."

Plaintiff is seeking to recover profits made on sales of peat by Gambetta to Coast Fertilizer during the period from May 5, 1957, to December 30, 1958.  The peat purchased from Gambetta by Coast Fertilizer during this period was in bulk,

---

[2]This judgment was in the amount of $64.07, which represents the difference between the amount which was awarded plaintiff in the previous trial as damages for defendants' breach of the covenant not to compete, and the amount that defendants recovered on their counterclaim (without interest) and without costs.

delivered directly to Coast Fertilizer's place of business, bagged by it and sold to the trade.

There are two basic questions involved in this appeal: (1) does the evidence support the finding made by the trial court, and (2) is this finding sufficient to comply with the directions contained in the remittitur from this court upon the previous appeal? Both of these questions must be answered in the affirmative.

Initially, it must be borne in mind that the burden was on the plaintiff to establish that the breach of warranty of the exclusive right to sell Gambetta's peat on the part of defendants was a proximate cause of damage to him; also, that it is the province of the trial court to determine the inferences that reasonably may be drawn from the evidence.

It will be recalled that on the first trial the court found that Coast Fertilizer had complained that plaintiff was mixing the peat with ''Hugrow'' and that plaintiff had admitted this; that plaintiff was slow in making deliveries and was not packaging the peat properly; also, that Coast Fertilizer had refused to purchase peat from plaintiff in any form except in bulk and that plaintiff had refused to sell to Coast Fertilizer in bulk; that defendants thereupon supplied Coast Fertilizer with Gambetta's peat for some time, crediting plaintiff's account with the profit.[3] From these findings, which were part of the record before the court on the second trial, the court could reasonably draw the inference that plaintiff lost Coast Fertilizer as a customer because plaintiff had adulterated the peat by adding ''Hugrow''; by his improperly packaging the peat; by his later refusal to deliver in bulk rather than in bags; and by his slowness in making deliveries. This inference is strengthened by the fact that when difficulties arose between plaintiff and Coast Fertilizer, defendants stepped in and made deliveries to Coast Fertilizer for a period of time on plaintiff's behalf. This inference furnishes ample evidentiary support for the court's finding on the second trial that ''plaintiff did not suffer any damages by reason of the breach by defendants of their warranty of their exclusive right to sell certain peat. . . .''

*Zinn* v. *Ex-Cell-O Corp.*, 148 Cal.App.2d 56 [306 P.2d 1017] and *Hacker etc. Co.* v. *Chapman Valve Mfg. Co.*, 17 Cal.App.2d 265 [61 P.2d 944], relied on by plaintiff, are not

---

[3]This is the basis for the judgment in favor of plaintiff on the first trial.

here apposite. In each of these cases, it appears that the plaintiff was suing for the breach of an exclusive sales agreement and that the damages recovered were based upon sales made by the defendant in territory in which plaintiff had been given an exclusive right to sell. In the instant case, the action at the second trial was based upon a breach of warranty of a contractual right, and recovery of damages was sought against defendants upon sales made by a stranger to the action, and not by defendants at all.[4]

It is quite apparent from our examination of the record and our references to it in the course of this opinion that the court on the second trial has properly followed the directions of this court contained in the remittitur; that it has passed upon the ultimate question that it was called upon to determine; and that its finding thereon is not only adequately supported by the evidence but covers the scope of the question presented for retrial. There is therefore no merit in plaintiff's contention that: ''The court erred in failing to make findings of fact necessary to support the judgment.'' The judgment entered is consistent with the conclusions stated in the opinion on the previous appeal and the finding of fact made upon the second trial.

The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.

A petition for a rehearing was denied July 29, 1963, and appellant's petition for a hearing by the Supreme Court was denied August 28, 1963. Peters, J., was of the opinion that the petition should be granted.

---

[4]Plaintiff had already obtained judgment in the first trial for damages due to defendants' breach of the exclusive right to sell, based upon the sales that *defendants* made in plaintiff's territory.