[Civ. No. 32710. Second Dist., Div. Four. July 29, 1969.]

ROBERT D. MacDONALD, Plaintiff and Respondent, v. MARCELLUS N. JOSLYN, Defendant and Appellant.

Morris Lavine for Defendant and Appellant.

Kindel & Anderson, Paul L. Freese and Malcolm George Smith for Plaintiff and Respondent.

FILES, P. J.—This action was brought to recover damages for the malicious prosecution of a will contest. Upon the ground that the defendant had wilfully refused to obey the orders of the court directing his appearance for the purpose of taking his deposition, defendant's answer was stricken and his default was entered. Following a default hearing, the court awarded plaintiff $123,052.91 as compensatory damages and $50,000 as exemplary damages. Costs were claimed and allowed in the sum of $346.20. Defendant has appealed from the judgment and the order denying his motion to strike the cost bill. Since his brief contains no argument directed to the appeal from the order, it must be deemed abandoned.

Plaintiff is the executor named in the will of Marcellus L. Joslyn, who died on June 30, 1963, leaving an estate in excess of 10 million dollars. Defendant, Marcellus N. Joslyn, is the

oldest son of the testator. Soon after his father's death defendant retained counsel to investigate the validity of the will, and at their request the hearing on the petition for probate was postponed from July 10 to September 13, 1963. Eventually the services of that firm were terminated. On September 12 defendant consulted a new attorney who, on September 13, filed a contest of the will upon the grounds of fraud and undue influence. On November 25 still another firm was substituted as attorneys of record. On February 25, 1964, that firm applied to the court for leave to withdraw upon the ground that their client had failed to provide them with any information which would support the contest, and they could not conscientiously proceed with the action. Following the release of that firm, defendant appeared in propria persona and obtained a postponement of the trial from March 9 to March 31, 1964. On March 26, 1964, he filed a voluntary dismissal of the contest.

After some discussion in the probate court as to whether that dismissal was effective, the court admitted the will to probate on April 29, 1964.

This action for malicious prosecution was filed on March 31, 1964. Defendant's answer, filed April 10, 1964, denied that he had acted maliciously, and alleged, among other things, that he had acted in good faith upon the advice of counsel.

On October 25, 1966, plaintiff gave notice that the deposition of defendant would be taken at the office of plaintiff's attorney in Los Angeles on November 10, 1966.

On November 3, 1966, defendant served notice that on November 10, 1966, he would make a motion in the superior court for an order forbidding the deposition upon the ground he was a resident of San Antonio, Texas.

Plaintiff then made a countermotion under Code of Civil Procedure section 2019, subdivision (b)(2), for an order requiring defendant to come to Los Angeles for his deposition.

Both motions were heard on November 10, 1966, at which time the court ordered that defendant appear in Los Angeles for a deposition on January 27, 1967.

Defendant did so appear but, on the advice of counsel, refused to answer many of the questions put to him.

Plaintiff's motion for sanctions was heard by the court on February 27, 1967. The court ordered that defendant appear in the office of plaintiff's attorney on March 20, 1967, and answer the questions listed in the motion "and all other proper questions."

On March 20 defendant failed to attend. His attorney arrived and stated that on March 17 he had filed a petition in the Court of Appeal for a writ of prohibition. The Court of Appeal denied the petition on April 3.

Plaintiff made a new motion to strike defendant's answer which, by stipulation, was heard April 18. After a hearing, the court made a finding that defendant's failure to appear on March 20 was wilful, and ordered defendant's answer stricken on May 12, unless defendant gave notice that he would appear for a resumption of his deposition and did in fact appear and answer questions before that date.

On May 3 defendant's attorney notified plaintiff's attorney in writing that the deposition would be taken at the latter's office on May 12 at 10 a.m. Neither defendant nor his attorney of record appeared at the time and place designated.

On June 1, 1967, upon the request of plaintiff, the court ordered the clerk to strike the answer and enter the default of defendant.

The default trial was set for September 21, 1967. On that day defendant filed, without prior notice, a motion to be relieved of default ''on the grounds that the proceeding taken against him was through his mistake, inadvertence, surprise or excusable neglect.'' In order to examine the record, the court postponed the hearing on all matters to October 11, on which date the court heard and denied defendant's motion. The court then heard plaintiff's evidence and ordered judgment.

### Plaintiff's Standing And Capacity to Sue

■ Plaintiff filed this action as an individual, to recover damages which he personally sustained by reason of defendant's malicious acts. These damages included loss of commissions which otherwise he would have earned as executor, loss of trustee's fees, injury to his reputation and mental anguish. He was not suing to recover anything on behalf of the estate or as the personal representative of the estate. Defendant's argument that plaintiff ''had not qualified as executor at the time of the filing of the cause'' has no relevance to this case.

■ Ordinarily the person who is plaintiff in a malicious prosecution had been the defendant in a prior proceeding which injured him. Plaintiff here filed a petition for probate of the will in which he had been named executor. When the will contest was filed the petitioner became in one sense a

"defendant" for the purposes of the trial of the contest.[1] He was a person who was aggrieved by the conduct of the contestant who had filed the contest for a spiteful purpose and without probable cause.

In the State of Maryland there is a line of cases holding that "damages can not be predicated upon the filing of a caveat to a will even though the caveat was filed maliciously and without probable cause." (See *Shamberger* v. *Dessel* (1964) 236 Md. 318 [204 A.2d 68, 70].) The reason for that rule, as the cited case explains, is "'. . . Maryland has steadfastly adhered to the so-called "English" rule that no action will lie for the malicious prosecution of a civil suit when there has been no arrest of the person, no seizure of the property of the defendant, and no special injury sustained which would not ordinarily result in all suits prosecuted for like causes of action.'"

The "so-called 'English' rule" has been followed in only a minority of American courts (see Prosser on Torts (3d ed. 1964) § 114, p. 870; Note 6 A.L.R. 406) and was expressly rejected in California in *Eastin* v. *Bank of Stockton* (1884) 66 Cal. 123, 126 [4 P. 1106, 56 Am.Rep. 77]. The court there pointed out that the English rule stood on the ground that the successful defendant was adequately compensated by his recovery of costs, which under English law, included attorney fees and other items not recoverable as costs in California. The *Eastin* opinion states (at p. 127): "But where the damages sustained by the defendant in defending a suit maliciously prosecuted without reasonable or probable cause, exceed the costs obtained by him, he has, and of right should have, a remedy by action on the case."

Since California does not follow the theory upon which the Maryland cases rest, those cases are not authority here. The reasoning of the *Eastin* opinion is quite as applicable to a will contest as it is to that case.

There is no reason to doubt that the petitioner-defendant in a will contest has standing to maintain an action for the injury done to him by the malicious prosecution of the contest.

### Sufficiency of the Complaint

■ The elements of the cause of action are "(1) a judicial proceeding favorably terminated; (2) lack of probable cause; and (3) malice." (*Jaffe* v. *Stone* (1941) 18 Cal.2d

---

[1] Probate Code section 371: "On the trial [of the will contest], the contestant is plaintiff and the petitioner is defendant. . . ."

146, 149 [114 P.2d 335, 135 A.L.R. 775]; *Masterson* v. *Pig'n Whistle Corp.* (1958) 161 Cal.App.2d 323, 335 [326 P.2d 918].)

The latter two elements were directly averred in the complaint; but defendant argues that the first is lacking because the voluntary dismissal of the will contest was not a "favorable termination." He points out that a will contest voluntarily dismissed by the contestant prior to trial is not res judicata, and that the contest may be refiled after probate.

It is well established that a "favorable termination" of the malicious proceeding need not be a final determination of the controversy. The rule is " 'that. it is sufficient to show that the former proceeding had been legally terminated. *The fact that such legal termination would not be a bar* to another civil suit or criminal prosecution founded on the same alleged cause *is no defense to the action for malicious prosecution;* . . .' " (*Jaffe* v. *Stone, supra,* 18 Cal.2d 146, 157, quoting with approval, and with italics added, from *Hurgren* v. *Union Mutual Life Ins. Co.* (1904) 141 Cal. 585, 587 [75 P. 168].)

The *Jaffe* opinion (which dealt with an allegedly malicious criminal prosecution) states (at p. 150): "If, however, the dismissal is on technical grounds, for procedural reasons, or for any other reason not inconsistent with his guilt, it does not constitute a favorable termination."

A voluntary dismissal of a civil action or proceeding by the plaintiff therein is not ordinarily considered a dismissal "on technical grounds" within the meaning of the *Jaffe* opinion. Such a voluntary dismissal, though expressly made "without prejudice," is a favorable termination which will support an action for malicious prosecution. (*Hurgren* v. *Union Mutual Life Ins. Co., supra,* 141 Cal. 585; *Kennedy* v. *Byrum* (1962) 201 Cal.App.2d 474 [20 Cal.Rptr. 98].)

This action was not prematurely brought. The complaint filed March 31, 1964, alleges that the will contest terminated March 26, 1964. The answer alleges that on March 26, 1964, "answering defendant voluntarily dismissed" the will contest. The two allegations mean the same thing. Under Code of Civil Procedure section 581, subdivision 1, the contestant may dismiss his will contest at any time before trial. The probate court may then go ahead to hear the original petition to probate the will. The contest, however, terminates with the dismissal. (See *Estate of Somers* (1947) 82 Cal.App.2d 757 [187 P.2d 433].) It follows that under the facts pleaded plaintiff's cause of action was complete on March 26, 1964.

*The Default And the Motion to Set It Aside*

■ Code of Civil Procedure section 2034, subdivision (b)(2)(iii), authorizes the court to strike out pleadings or render judgment by default against a party who disobeys the court's order to attend a deposition and answer questions. This statute is constitutional. (See *Unger* v. *Los Angeles Transit Lines* (1960) 180 Cal.App.2d 172 [4 Cal.Rptr. 370, 5 Cal.Rptr. 71]; *Fred Howland Co.* v. *Superior Court* (1966) 244 Cal.App.2d 605, 612 [53 Cal.Rptr. 341].) ■ The record amply supports the finding that defendant's disobedience was wilful and persistent and inexcusable. He has never at any time offered any valid excuse for his conduct. In an affidavit made in September 1967, defendant stated that on March 20, 1967, he "was in Chicago on very important business," but he also admitted that on March 7 his attorney had "urged affiant to be present at this deposition of March 20, as a precaution." He did not at any time ask to have the March 20 deposition date adjusted to meet his convenience. Throughout this litigation, whenever defendant's failure to give a deposition was raised, the response of defendant's attorneys was to criticize the plaintiff's pleading. At the time of defendant's last failure to appear for his deposition the case was at issue, the superior court had rejected his attack on the complaint, and the appellate court had refused to issue a writ.[2] Under the circumstances defendant's misguided notions about the sufficiency of the complaint offer not the slightest color of an excuse for his refusal to give a deposition.

■ Defendant's motion for relief from default, presented without advance notice on September 21, 1967, the day set for the default hearing, only emphasizes and reaffirms his contumacy. The affidavit offered in support of the motion deals largely with collateral matters. No attempt was made to show that defendant's failure to give a deposition was a result of mistake, inadvertence, surprise or excusable neglect.[3] He did

---

[2]The first session of the deposition, when defendant refused to answer questions, was January 27, 1967. On February 7 defendant filed a motion for summary judgment which was heard on February 17 and denied on February 23. On February 27 the court ordered defendant to appear and answer questions on March 20. On March 17 defendant filed a petition in the Court of Appeal, which did not issue any stay order. That petition was denied April 3. On April 18 the superior court gave defendant one more chance to answer questions. Defendant agreed to appear on May 12 but failed to do so. This last insolence has never been explained. The default was ordered June 1.

[3]Code of Civil Procedure section 473 provides: "The court may, upon such terms as may be just, relieve a party or his legal representative from

not explain why he had waited until September 21 to ask for relief. More important, there was no statement that if given another chance, he would comply with the court's order to appear and testify.

Defendant's brief on appeal seems to assume that the order striking his answer was based in part upon the refusal of another witness, the attorney who had filed the will contest, to answer questions. The record is clear that both the conditional order of the trial court, made after the April 18 hearing, and the final order of June 1 directing entry of the default, were based solely upon the conduct of defendant personally in refusing to appear and answer questions.

It was not an abuse of discretion to refuse to vacate the default.

### Sufficiency of the Evidence

At the default hearing, defendant's son and defendant's sister as well as plaintiff testified. The probate file in the estate of Marcellus L. Joslyn was received in evidence by reference.

The evidence shows that the testator had been a highly successful businessman who, at the time of the execution of his will, was in good health and active in the management of his business and personal affairs. During the testator's lifetime he and his wife had placed substantial property in trusts, the income from which went to their four children. Defendant's income from these trusts had amounted to over $100,000 per year for several years, and for 1967 it was approximately $225,000. Having provided so generously for his children, the testator made a will which left the bulk of his estate in a series of trusts for the benefit of his grandchildren and their heirs. This will, like some earlier wills, had been prepared by counsel as a result of extensive planning and consultation.

Defendant was a member of the California bar, but not in active practice. Since 1950 he had resided outside of Califor-

---

a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect.''

When the trial court asked defendant's attorney what was the mistake, the attorney answered ''The mistake in not coming in and letting him take his deposition. . . .'' This may have been a mistake in the sense that defendant had failed to make a wise choice among the alternatives presented to him. But there can be no doubt that defendant was aware of the court's orders, and that his disobedience was a calculated choice and was, on at least one occasion, against the advice of the attorney who then represented him. Such conduct does not classify as a ''mistake'' within the meaning of section 473.

nia and had had no contact with his father or other members of the family in the Los Angeles area except by an occasional letter.

Plaintiff had served as an attorney for the testator and his various business enterprises continuously since 1947. He served as an officer of several corporations, assisted the testator and other members of the family with their tax problems, and was a trustee of the Marcellus L. Joslyn Foundation. He had supervised the testator's estate planning and the preparation of several wills, including the last one, with some advice from other counsel.

Plaintiff was also a member of the advisory board of a national bank, executive vice president and trustee of a profit-sharing fund, and chairman of the board of a private school.

Nowhere in the record is there any evidence that there ever was any reason for defendant to believe that he had grounds to contest his father's will. The testamentary provisions were not unnatural, the estate plan was one which had been worked out over a period of many years, and the testator was not a likely victim of undue influence by anyone.

 Malice is inferred from want of probable cause. (*Kennedy* v. *Byrum* (1962) 201 Cal.App.2d 474, 482 [20 Cal.Rptr. 98].)

 It is futile for defendant to argue that good faith reliance on the advice of counsel is a defense, for the record shows no such advice.[4] The inferences to be drawn from the conduct of defendant's various attorneys are not favorable to him. One firm of attorneys investigated the case on his behalf, but did not act. Defendant then employed another attorney who apparently filed the contest without prior investigation. The third firm who appeared as attorneys of record for the contestant obtained permission of the court to withdraw upon the ground that their client had misled them as to the facts.

 The defense of reliance upon the advice of counsel is not available unless there has been a disclosure to the attorney of the pertinent facts within the knowledge of the client. (*Kennedy* v. *Byrum, supra,* 201 Cal.App.2d 474, 481.) It need not be inferred that defendant made such a disclosure to any of the attorneys who agreed to represent him in the will contest.

---

[4]Questions on that subject were among those which defendant refused to answer in the deposition which was partially taken on January 27, 1967.

## *Damages*

By reason of the pendency of the pre-probate contest the public administrator was designated as special administrator of the Marcellus L. Joslyn estate, and served until plaintiff could qualify after dismissal of the contest. For his services the public administrator received $87,015.41 as ordinary commissions and $14,737.50 for extraordinary services, amounts which plaintiff would otherwise have earned.

The testator, acting under a power conferred by the will of his deceased wife, appointed plaintiff successor trustee of a trust which had been created under the wife's will. Because of the will contest a bank served as interim trustee, receiving fees at the rate of $17,000 per year. Plaintiff testified that he would have charged $7,000 for his services during the seven months of delay caused by defendant.

Plaintiff lost fees amounting to $4,300 as a testamentary trustee under the will of Marcellus L. Joslyn.

The pleading filed by defendant in the will contest charged plaintiff with undue influence, fraud and conspiracy, and gratuitously included a demand for $39,000,000 "exemplary and punitive damages" against him personally. These charges received widespread newspaper publicity, and were the subject of much comment by plaintiff's business and social acquaintances. Immediately afterwards a loan officer at his bank advised plaintiff that they were calling the $100,000 loan to him which was then outstanding. At the same time plaintiff was replaced as trustee of a profit-sharing fund, and was asked to resign as vice president and director of a business corporation. His health suffered as he lost sleep and his blood pressure rose.

The trial court awarded $10,000 as general damages for the injury to reputation and mental anguish, and as special damages the amounts of probate commissions and trustee's fees which he had lost, for a total of $123,052.91 compensatory damages, plus $50,000 exemplary damages.

The award of exemplary damages was a proper exercise of the trial court's discretion upon a finding of malice (Civ. Code, § 3294). In determining the amount necessary to impose the appropriate punitive effect the court was entitled to consider the wealth of the defendant. (*Marriott* v. *Williams* (1908) 152 Cal. 705, 710 [93 P. 875, 125 Am.St.Rep. 87].) In this case the offender is a man who, through the

bounty of his parents, enjoys an enormous income, who is educated in the law, and who has chosen to squander some of his ample resources in a vexatious attack upon his father's executor, to the latter's severe damage. The amount awarded by the trial court is not excessive.

The judgment is affirmed. The appeal from the order denying the motion to strike the cost bill is dismissed.

Jefferson, J., and Kingsley, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 24, 1969.