ANGLO–AMERICAN GENERAL
AGENTS, a California
Corporation, Plaintiff,

v.

JACKSON NATIONAL LIFE INSUR-
ANCE COMPANY, a Michigan Corpora-
tion; and A. J. Pasant, an Individual,
Defendants.

No. C–77–2091 RFP.

United States District Court,
N. D. California.

May 2, 1979.

John F. Wells, Lise A. Pearlman, Stark, Stewart, Simon & Sparrowe, Oakland, Cal., for plaintiff Anglo-American General Agents.

Gordon Johnson, Peter Anderson, James K. Cameron, Thelen, Marrin, Johnson & Bridges, San Francisco, Cal., for defendants Jackson National Life and A. J. Pasant.

## MEMORANDUM AND ORDER

PECKHAM, Chief Judge.

This is a diversity action brought by Anglo-American General Agents ("Anglo") to challenge certain business practices of defendant Jackson National Life Insurance Company ("Jackson"). The other named defendant, A. J. Pasant, is the President and Chairman of the Board of Jackson. Anglo, a general insurance broker specializing in the placement of substandard risk and term insurance through independent life insurance agents and brokers, objected particularly to a change in Jackson's marketing practices in late 1973. Rather than utilizing only general agents such as Anglo, Jackson began to sell directly to sub-agents through its own regional offices. This change in marketing led to the opening of the Jackson West office in Torrence, California, in the fall of 1973. Problems created by the competition of that office with Anglo culminated in the termination of the parties' contractual agreement by Jackson, effective on November 26, 1977. On September 19, 1977, three days after Anglo received notice of the termination, Anglo brought this lawsuit and sought preliminary relief against the termination. On December 7, 1977, this court declined to issue a preliminary injunction on behalf of plaintiff.

The original complaint alleged breach of a contract not to compete in the Bay Area, wrongful termination of the insurance agency agreement, fraud, intentional interference with economic relations, antitrust violations, and violations of the California Unfair Practices Act (Bus. & Prof.Code § 17000 et seq.) and the California Insurance Code (§ 790 et seq.). The antitrust allegations were dismissed voluntarily, and on November 9, 1978, partial summary judgment was granted in favor of defendants on the claim for wrongful termination and on the California statutory claims. The three-week trial on the other claims ended on February 2, 1979. The motion for a directed verdict was denied, and the jury returned the following verdict:

1. It found in favor of plaintiff on the breach of contract claim;

2. It found in favor of plaintiff on the claim for intentional interference with economic relations;

3. It failed to find in favor of plaintiff on the claim for fraud;

4. It awarded compensatory damages of $124,500 against defendants on the contract and intentional interference with economic relations claims;

5. It awarded no punitive damages against Jackson;

6. It awarded punitive damages against Mr. Pasant in the sum of $100,000.

Defendants have moved for a judgment notwithstanding the verdict (judgment n. o. v.) or, alternatively, for a new trial or for remittitur of damages. As explained below, we find that the contract verdict, the verdict on the intentional interference with economic relations, and the compensatory damage award are unobjectionable, but the award of $100,000 in punitive damages against Mr. Pasant was clearly excessive, particularly in light of the evidence of Mr. Pasant's wealth. We therefore order that, pursuant to federal rule 59(a), plaintiff remit $95,000 of the punitive damage award or submit to a new trial on the issues of damages for breach of contract and of liability and damages for intentional interference with economic relations.

## APPLICABLE LAW

The court has considerable discretion under federal rule 59 to order a new trial to prevent any perceived miscarriages of justice, and there are many possible grounds for such a decision. See generally 11 Wright & Miller, *Federal Practice and Procedure: Civil* § 2808; *Hanson v. Shell Oil Co.,* 541 F.2d 1352 (9th Cir. 1976), *cert. denied,* 429 U.S. 1074, 97 S.Ct. 813, 50 L.Ed.2d 792. The standard is not as strict as that for granting a judgment n. o. v. under federal rule 50(b). Under the latter, for example,

[T]he trial judge cannot reweigh the evidence or consider the credibility of the witnesses. The evidence must be viewed in the light most favorable to the party against whom the judgment would be granted and all inferences must be drawn in that party's favor.

*Kay v. Cessna Aircraft Co.,* 548 F.2d 1370, 1372 (9th Cir. 1977). The rule 50 motion cannot be granted unless "the evidence permits only one reasonable conclusion as to the verdict." *Id.* A new trial can be ordered, however, even if there is "substantial evidence" on the record in support of the verdict. Sound discretion may still dictate a new trial. Nevertheless, the burden of proof on a motion for a new trial is on the moving party, and the court should not lightly disturb a plausible jury verdict. The court must be guided by a common sense determination such as that suggested by Wright and Miller:

If, having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed, it is to be expected that he will grant a new trial.

11 Wright and Miller, *Federal Practice and Procedure: Civil* § 2806 at 49. Furthermore, new trials should not be granted on the basis of asserted errors which in the circumstances were not prejudicial. *See* federal rule 61. Given these well-known general principles, we can turn to defendants' particular contentions.

## THE ASSERTED GROUNDS FOR JUDGMENT N. O. V. OR A NEW TRIAL

The trial in this case took several weeks, and it involved sharply contested issues. Many of the factual issues turned on the credibility of witnesses, particularly on the credibility of Mr. Grubin, President of Anglo, and of Mr. Pasant, the President of Jackson. It is evident from the verdict that the jury chose to believe Mr. Grubin on most of the key issues, and there is no reason to disturb that determination. Therefore, as discussed below, defendants cannot persuasively challenge the jury's basic factual findings. Defendants' particular arguments can now be examined individually.

### I. *The Contract Claim*

Defendants' first contention needs little analysis. It is argued that the contract verdict is invalid as a matter of law under

federal rule 50, or against the weight of the evidence such that the court should order a new trial under federal rule 59. The theory is that the evidence showed at most a contract not to solicit orders in the Bay Area, rather than not to accept such orders. The jury, however, clearly did have evidence in support of its finding, including the testimony for Anglo of Mr. Grubin and Mr. Boerne. Even if terminology was sometimes confused in the testimony, there was certainly evidence that the contracting parties intended to do what the jury found they did—grant Anglo, as between Jackson and Anglo, an exclusive right to sell in the Bay Area.

## II. *Compensatory Damages*

More substantial is defendants' contention that the damage award was erroneous, but again it appears that the jury finding was completely proper. The jury instruction on the measure of damages set out the applicable California law. It stated that plaintiff could only recover commissions on business that Anglo "could have obtained." And the jury apparently found that plaintiff could have obtained all the business on the policies sold by Jackson West, defendants' office in Torrence, California, except for the annuity business. Accordingly, the jury evidently subtracted the sum of $63,800—the amount of the annuity commissions—from the $188,300 sought by Anglo on all policies sold and awarded $124,500 to plaintiff.

Defendants argue first that plaintiff's improper argument to the jury on lost profits allowed the jury to consider damages for loss of good will that were too speculative to be allowed, but it is clear that the jury did not base its award on any such argument. The award would have certainly been much higher and no doubt not so closely tied to the figures on lost commissions.

Defendants also argue that the evidence was insufficient as a matter of law, or at least not sufficient to withstand a motion for a new trial, on the ability of Anglo to make the sales for which it claimed compensatory damages. We disagree on the evi-

dence; furthermore, the case strongly relied upon by defendants and used in the jury instruction, *Hacker Pipe & Supply Co. v. Chapman Valve Mfg. Co.,* 17 Cal.App.2d 265, 270, 61 P.2d 944 (1936), specifically allowed a trier of fact to conclude on the basis of the fact that the sales were made by the defendant that the sales could have been made by plaintiff.

> The fact that the goods were sold by defendants furnished sufficient proof that they could have been sold by plaintiff. . . . Defendants, having taken the matter into their own hands, and having refused plaintiff an opportunity to make the sales or assist in making them, cannot be heard to say that the arbitrary prices which they fixed were the highest that could have been obtained.

*Id.* at 270, 61 P.2d at 948. The jury's award of compensatory damages is completely consistent with this aspect of the court's holding in *Hacker.*

## III. *Intentional Interference with Economic Relations*

■ Defendants' argument against this part of the verdict simply attempts to rewrite jury instructions in a manner not suggested before and not necessary under California law. The jury instruction was patterned closely after the case of *Buckaloo v. Johnson,* 14 Cal.3d 815, 122 Cal.Rptr. 745, 537 P.2d 865 (1975), and the instruction stated, *inter alia,*

> [I]f the defendants establish by a preponderance of the evidence the following facts:
>
> 1. Jackson had the right to compete with Anglo for the business of agents not already under contract with Anglo; and
>
> 2. Jackson's intent was to increase its volume of business and promote competition;
>
> then you must find for defendants on this claim of Anglo.

Now defendants wish to suggest that, in order to overcome a right to compete, a specific finding of "improper means" is somehow necessary. It is not, and even the

Restatement authorities cited by defendant do not say that a finding of improper means is a specific requisite for this claim. It is one of several possibilities. Again, there is ample evidence to support this verdict and no good reason to set it aside.

IV. *Punitive Damages*

■ Defendants challenge both the propriety and the amount of the punitive damages awarded to plaintiff against Mr. Pasant. We agree only with respect to the second contention. While the jury instructions on punitive damages were not as complete as they might have been in retrospect, they were adequate. The jurors received a copy of the·instructions after they raised a question about the elements of fraud and deceit, and they no doubt read and considered the instructions carefully. The relevant instructions stated:

> You may in your discretion award such additional damages, known as punitive or exemplary damages, if, but only if, you find by a preponderance of the evidence that said defendants were guilty of fraud in the conduct on which you base your finding of liability.
>
> "Fraud" as used in this instruction means an act of trickery or deceit, intentional misrepresentation, concealment or nondisclosure committed for the purpose of causing injury or depriving a person of his property or his legal rights.
>
> .    .    .    .    .
>
> If you do not find for Anglo on its fraud claim or on its claim for intentional interference with economic relations, you may not award punitive or exemplary damages since such damages may not be awarded for breach of contract claims.

Defendants argue that since the jury made no finding of liability for fraud, and the instruction states that a finding of fraud is necessary to award punitive damages, then punitive damages cannot be granted. It is not disputed, however, that punitive damages may be awarded for the tort of intentional interference with economic relations, and the instruction does state—even if negatively—that punitive damages can be awarded for that claim. Further, the instruction carefully defines "fraud as used in this instruction," and the definition does not include all the elements of liability for a fraud claim. The jury no doubt found fraud in the sense of the punitive damage instruction without necessarily finding all the elements of a fraud claim, such as justifiable reliance.

■ The amount of the damages, however, is unreasonable and excessive. The jury awarded no punitive damages against Jackson but awarded $100,000 in punitive damages against Mr. Pasant. This court has the power to order a remittitur of excessive damages and, if plaintiff does not agree to the remittitur, a new trial. *See, e. g., Minthorne v. Seeburg Corp.,* 397 F.2d 237, 244–45 (9th Cir. 1968), *cert. denied,* 397 U.S. 1036, 90 S.Ct. 1354, 25 L.Ed.2d 647. In light of recent California case law, the award is clearly excessive.

■ The basic problem with the $100,-000 award is its relationship to Mr. Pasant's wealth. Punitive damages are designed to punish and to make an example, just as criminal fines may do. They are not, however, supposed to go beyond the level necessary to punish and deter properly. Accordingly, recent California cases have struck down an award of punitive damages for $2.5 million against a corporation with net assets of $16.8 million, *Little v. Stuyvesant Life Ins. Co.,* 67 Cal.App.3d 451, 136 Cal. Rptr. 653 (1977) (damages reduced through remittitur to $250,000), and an award of $175,000 against a corporate defendant with net assets of $532,000, *Zhaden v. Downtown L. A. Motors,* 66 Cal.App.3d 481, 136 Cal. Rptr. 132 (1976) (remanded for a new trial). One Court of Appeals has upheld an award in punitive damages of $50,000 against an individual with some $225,000 in trust income in the most recent year reported, *MacDonald v. Joslyn,* 275 Cal.App.2d 282, 79 Cal.Rptr. 707 (1969). But, the California Supreme Court decision of *Neal v. Farmers Ins. Exchange,* 21 Cal.3d 910, 148 Cal.Rptr. 389, 582 P.2d 980 (1978), suggests that only in unusual circumstances will such a high percentage of income be allowed. After

careful consideration the court in *Neal* upheld an award of $740,000 in punitive damages against the corporate defendant since the award was "less than one-tenth of 1 percent of defendant's gross assets and less than a week's worth of its net income." *Id.* at 929, 148 Cal.Rptr. at 400, 582 P.2d at 991.

There is no precise evidence on the record of Mr. Pasant's net assets, but he testified that his gross assets amount to about $4,000 in a bank account, a car, a family home, and about 180,000 shares of stock in Jackson National Life Insurance. Each share is worth about $4, but they are not easily marketed at that price since they make up some 15 percent of the outstanding shares. Further, Mr. Pasant's gross income in 1977 was about $75,000. In view of the conduct for which he is charged in this case and his income and assets, the award of $100,000 is grossly out of line. We find that the jury could not reasonably have awarded more than $5,000 in punitive damages against him, which would amount in any event to almost three weeks of Mr. Pasant's gross income and probably more than one-half of one percent of net assets. It is a sum that will serve the deterrent purpose without being unreasonably large.

■ This court thus orders that plaintiff remit $95,000 of the punitive damage award or submit to a new trial. In view of the interrelationship of the punitive damages determination with the determinations of liability for intentional interference with economic relations, the new trial would have to address all of plaintiff's claims brought to trial except fraud and the issue of liability for breach of contract. The new trial would need to determine the damages for breach of contract and the issues of liability and damages for intentional interference with economic relations.

## CONCLUSION

Defendant's motion for judgment notwithstanding the verdict is denied, as is the motion for a new trial unless plaintiff declines to remit $95,000 of the $100,000 award of punitive damages against Mr. Pasant. If that sum is not remitted, this court will have to order a new trial on all matters except the questions of fraud and liability for breach of contract.

IT IS SO ORDERED.