Filed 10/17/17; Certified for Publication 11/13/17 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MEDLEY CAPITAL CORPORATION,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SECURITY NATIONAL GUARANTY, INC. et al.,<br><br>    Defendants and Appellants. | A147726<br><br>(San Francisco County<br>Super. Ct. No. CGC15547788) |

Respondent Medley Capital Corporation (MCC) was sued for fraud in a cross-complaint filed by appellants Security National Guaranty, Inc. and Edmond Ghandour (when referred to collectively, appellants). The cross-complaint was filed against the background that appellants were advised MCC had no involvement in the transaction involved in the lawsuit, which lawsuit was thereafter maintained despite that appellants were warned that it should be dismissed. Appellants refused, and the cross-complaint remained pending. Then, after appellants settled the main lawsuit against them, they filed a voluntary dismissal in favor of MCC.

Respondent then sued appellants for malicious prosecution. Appellants filed an anti-SLAPP motion to dismiss, which the trial court denied, concluding that MCC met its burden under step two of the anti-SLAPP analysis, demonstrating a probability of success on its claim for malicious prosecution. We reach the same conclusion, and we affirm.

1

# BACKGROUND

## The Parties and Related Entities

Appellants are Security National Guaranty, Inc. (for consistency with the briefs, SNG) and Edmond Ghandour, SNG's president and chief executive officer.

In addition to respondent MCC, there are other Medley-related entities, including Medley Capital LLC, Medley Management Inc., Medley Opportunity Fund Ltd., and Medley Opportunity Fund LP. Medley Management Inc. is a New York Stock Exchange listed company, ticker symbol MDLY.

## The General Facts, and the Underlying Lawsuit

In 2008 SNG entered into an agreement with Fourth Third LLC by which Fourth Third would loan SNG up to $22,500,000. The loan was in connection with the development known as Monterey Bay Shores, apparently a development connected to Ghandour.

On July 2, 2014, attorney Mark Adams, of Jeffer Mangels Butler & Mitchell, wrote a letter addressed to "John Fredericks, Esq. [¶] General Counsel [¶] Medley LLC," which letter began as follows: "This firm represents Security National Guaranty, Inc. ('SNG') in connection with the failed commitment by Fourth Third LLC, Medley Capital LLC, Medley Capital Corporation, Medley Opportunity Fund L.P., and Medley Opportunity Fund Ltd. (collectively, 'Medley') to accept a discounted payoff ('DPO') of the outstanding balance owed pursuant to that certain Credit Agreement dated as of April 21, 2008 (as amended, restated, or otherwise modified, the 'Credit Agreement')." Following five paragraphs of explanation, the letter ended with this: "In light of the above, demand is made that Medley accept the DPO of $15 million by the close of business on July 9, 2014. Absent that, we have been instructed to immediately commence suit."

Justin Rawlins, an attorney at Winston & Strawn, replied the next day, July 3, in a strongly worded letter that began as follows:

"Dear Mr. Adams:

2

"I received your letter last night while I was in the process of preparing a letter to your colleague regarding the inflammatory emails to my client sent this past Tuesday by Mr. Ghandour, who owns and controls Security National Guaranty, Inc. ('SNG').

"In reading your letter, it appears that either (a) you do not understand the facts and have taken positions without seeking to investigate or verify your information, or (b) you know that your allegations are unsupported and have nonetheless chosen to harass and threaten my client.

"Your letter raises the following issues/concerns:

"It references parties who have no relationship with SNG whatsoever,

"It's factually erroneous in almost every material respect, including as to the loan balance, the alleged 'commitment' and past discussions,

"It improperly places blame on Fourth Third where SNG, not Fourth Third or any lender, is responsible for SNG's own failures, and

"It indicates that Mr. Ghandour may cause SNG to take (or fail to take) actions that will harm Fourth Third's collateral.

"These concerns are addressed below.

"*The Proper Parties Involved*

"Your letter improperly attempts to draw in Medley Capital LLC, Medley Capital Corporation, Medley Opportunity Fund LP, and Medley Opportunity Fund Ltd., where the lender, and the only entity who has any relationship with SNG, is Fourth Third LLC. It is particularly troubling that you reference Medley Capital Corporation, a publicly traded business development company with no interest in or connection whatsoever with the loans made by Fourth Third LLC to SNG. These kinds of unsubstantiated claims asserted against a publicly traded company without investigation of the underlying facts could cause significant damage." The letter went on to point out "*Material Mistatements [sic] of Key Facts Warrant Immediate Revocation of Your Letter*," a section of the letter that ended with this: "In light of the foregoing, we respectfully suggest that you immediately revoke your letter so you have an opportunity to review the facts."

That same day, Fourth Third notified SNG that the loan had reached maturity, and demanded immediate payment of all amounts owed under the terms of the loan.

On July 25, represented by Winston & Strawn, Fourth Third filed a complaint against SNG in Monterey County Superior Court. The complaint alleged that SNG had defaulted on the loan, and currently owed $43,979,682.72, representing past due principal, interest, fees, and penalties. The complaint sought judicial foreclosure of the deed of trust, appointment of a receiver, injunction in aid of receiver, and judicial foreclosure of personal property. Fourth Third's complaint was lengthy, and with numerous exhibits, totaling 289 pages.

On September 2, SNG filed its answer to the complaint, and also the pleading giving rise to the issue here—a cross-complaint that named not only Fourth Third but also MCC. The cross-complaint alleged seven causes of action against Fourth Third, and one cause of action against both it and MCC. It was the third cause of action for fraud, which alleged the following:

On information and belief, that MCC was the servicer of the loan and an agent of Fourth Third; that in January 2013, Fourth Third and MCC approached SNG about an early payoff of the loan which by its terms was not due until June 15, 2014; that between January and June, 2013, Ghandour participated in numerous communications and negotiations of the terms of a discounted payoff agreement with Andrew Fentress, who was introduced to SNG as a director of MCC and the person responsible for dealing with the loan on Fourth Third's behalf; that at a meeting at MCC's offices in New York in June 2013, Fentress on behalf of the lender represented that Fourth Third agreed to a modification of the loan, whereby it agreed to accept a discounted payoff of $15 million, provided that SNG would (i) continue to process the entitlements for the development of the property and (ii) make arrangements to borrow funds sufficient to pay off (i) certain senior third party loans secured by the property and (ii) the discounted $15 million payoff amount (the DPO agreement); and that in reliance on the agreement, SNG continued to process the property entitlements, obtained the California Coastal Commission's "Notice

4

of Intent" to issue a "Coastal Development Permit," and undertook to locate a new substitute lender.

The third cause of action further alleged that in early June 2014, Fourth Third and MCC failed and refused to honor their representations under the DPO agreement and refused to accept the agreed upon $15 million discounted payoff amount in satisfaction of the loan obligations; on information and belief that neither Fourth Third nor MCC intended to honor their representations; and that Fourth Third and MCC fraudulently intended to "string SNG along" so that SNG would continue its efforts to obtain the entitlements for the property so that Fourth Third and MCC would benefit from the additional value in the property, once they demanded full payment of all sums due under the loan. The cross-complaint alleged damages resulting from the claimed fraudulent conduct in excess of $300 million, and also prayed for punitive damages.

We digress briefly from the pleadings to note that at the same time SNG had named MCC as a cross-defendant, Medley Management Inc. an affiliate of MCC, was preparing for a $108 million initial public offering, and in fact filed its amended IPO registration on September 15, 2014. One week later, on September 22, SNG issued a press release announcing that it had sued MCC, an "NYSE business," a press release that began with the following headline: "Medley Capital Corporation and Fourth Third Sued by Security National Guaranty for in Excess of $300 Million." Shortly after this press release, Yahoo and other message boards were replete with investors asking about the lawsuit and whether MCC had committed fraud.

On October 9, attorney Rawlins wrote to SNG's attorney Adams, pointing out a "mistake in your [cross-complaint] that needs to be corrected." The letter reads in its entirety as follows:

"There is a mistake in your counterclaim that needs to be corrected.

"Your counterclaim names Medley Capital Corporation as a defendant, alleging that Medley Capital Corporation acted as agent and loan servicer for Fourth Third. Medley Capital Corporation is not an agent or servicer for Fourth Third LLC.

5

"Medley Capital Corporation is one of several investment companies and funds managed by subsidiaries of Medley Management Inc. Medley Capital Corporation does not have, nor has it ever had, any interest, role or relationship with respect to the loan made by Fourth Third LLC to Security National Guaranty.

"Two of Medley's other funds, Medley Opportunity Fund Ltd and Medley Opportunity Fund LP (collectively, 'MOF I') hold all of the economic interests in the loan made by Fourth Third LLC to Security National Guaranty. Medley Capital LLC is the investment manager for MOF I. Medley Capital LLC is a completely separate legal entity from Medley Capital Corporation.

"As Medley Capital Corporation has no involvement with this matter, we ask that you immediately dismiss it from the action. If we do not speak sooner, I will follow up with you by phone on Monday to confirm."

Adams did not respond, and Rawlins followed up by e-mails on October 13 and 16. That prompted a reply, Adams's 21-word e-mail to Rawlins of October 16: "Yes, sorry, Justin. I have spoken with my client and SNG has re-confirmed that Medley Capital Corporation is a proper defendant."

On November 7 MCC filed a declaration of Fentress in connection with an opposition to SNG's motion for preliminary injunction. Fentress—who, it will be recalled, was the claimed participant in the claimed communications that formed the basis of SNG's fraud claim—testified among other things that at the meetings with Ghandour and Weinstein he was representing Medley Capital as investment manager for the owner of the loan; that at no time during the meetings did he represent MCC; and that neither he (nor anyone else from MCC) had entered into a DPO agreement.

In a separate declaration, MCC's General Counsel Fredericks set forth over 80 different e-mail exchanges with Ghandour that, MCC claimed, made it clear that: (1) MCC did not have any involvement with the loan, (2) Fentress and Thomas Quimby never represented MCC in discussions with Ghandour or Weinstein, and (3) a DPO agreement was never negotiated or agreed upon. Indeed, MCC claimed that e-mails between Fredericks and Ghandour demonstrated that Ghandour was admitting that as late

6

as October 8, 2013—well after the June 2013 date the DPO agreement was reached—that there was no DPO agreement between the parties. Quoting some e-mails from Ghandour, here are a few examples:

September 9, 2013: "The biggest issue . . . is the absence of a DPO."

September 9, 2013: "Please consider issuing a DPO ASAP."

June 16, 2014: "[W]e need to agree on the DPO soon . . . ."

October 8, 2013: "Medley needs to step up with an agreeable DPO."

Despite all that, SNG refused to dismiss MCC from the cross-complaint unless it was willing to waive any claims against appellants, including any claims for malicious prosecution. MCC refused.

### SNG Settles with the Lender and Dismisses the Cross-Complaint Against MCC

On February 19, 2015, SNG and Fourth Third reached a settlement of the claims each had alleged against the other, pursuant to which SNG paid $17 million. The settlement required the dismissal with prejudice of Fourth Third's complaint and SNG's cross-complaint against Fourth Third. The settlement did not include MCC, and there was no requirement that MCC be dismissed as part of it, though SNG did agree that it would forbear from prosecuting the cross-complaint until certain conditions occurred.

A few months later, in early June, after finalizing the settlement with Fourth Third, SNG filed a dismissal of the cross-complaint against MCC without prejudice.

### MCC Sues for Malicious Prosecution

On September 4, 2015, MCC filed a complaint for malicious prosecution, naming as defendants SNG and Ghandour.

On November 3, SNG and Ghandour filed a special motion to strike under Code of Civil Procedure section 425.16 (motion or anti-SLAPP motion). The motion was accompanied by a memorandum, a request for judicial notice requesting notice of over 450 pages of material, and two declarations, of attorney Adams and Ghandour. Adams's declaration was brief indeed, two paragraphs. Ghandour's declaration was not: it was in two parts, totaling 27 paragraphs, and had attached over 550 pages of exhibits.

7

On January 8, 2016, MCC filed its opposition to the anti-SLAPP motion. It included two declarations, of Fentress and Fredericks. Fredericks's declaration was more voluminous than that of Ghandour, 778 pages including exhibits. MCC's opposition also included objections to evidence.

SNG and Ghandour filed a reply, and the motion came on as scheduled, on January 29, prior to which the trial court had issued a tentative ruling denying the motion. The court heard argument, following which it entered its order denying the motion. The court did not rule on any evidentiary objections.

On February 8, SNG and Ghandour filed their notice of appeal.

## DISCUSSION

### The Law and the Standard of Review

In 2015 we published our opinion in *Lanz v. Goldstone* (2015) 243 Cal.App.4th 441. There, like here, the complaint alleged one count for malicious prosecution. There, like here, the appeal was from the trial court's order denying the defendant's anti-SLAPP motion, which concluded that plaintiff there had met his burden of demonstrating a probability of success under step two of the anti-SLAPP analysis. In short, the setting in *Goldstone* was identical to the setting here, and provides a perfect template to introduce the analysis here. We thus begin with extensive quotation from *Goldstone*, with slight editing to reflect the situation before us:

*"SLAPP Law and the Standard of Review*

"Subdivision (b)(1) of section 425.16 of the Code of Civil Procedure provides that '[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.' Subdivision (e) of section 425.16 elaborates the four types of acts within the ambit of a SLAPP.

"A two-step process is used for determining whether an action is a SLAPP. First, the court decides whether the defendant has made a threshold showing that the

8

challenged cause of action is one arising from protected activity, that is, by demonstrating that the acts underlying the plaintiff's complaint fit one of the categories spelled out in Code of Civil Procedure, section 425.16, subdivision (e). If the court finds that such a showing has been made, it must then determine the second step, whether the plaintiff has demonstrated a probability of prevailing on the claim. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 (*Navellier*).)

"Here, the parties agreed that [MCC's] malicious prosecution case came within the first step of the anti-SLAPP analysis. (See *Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 215 ['The plain language of the anti-SLAPP statute dictates that every claim of malicious prosecution is a cause of action arising from protected activity because every such claim necessarily depends upon written and oral statements in a prior judicial proceeding.'].)

"So, all the briefing and [the trial court's] analysis addressed only the second step in the SLAPP analysis, as will we. And as to how we decide that step, we set forth the governing law in *Grewal v. Jammu* (2011) 191 Cal.App.4th 977, 989–990 (*Grewal*):

" 'We decide the second step of the anti-SLAPP analysis on consideration of "the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b).) Looking at those affidavits, "[w]e do not weigh credibility, nor do we evaluate the weight of the evidence. Instead, we accept as true all evidence favorable to the plaintiff and assess the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law." (*Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 699–700.)

" 'That is the setting in which we determine whether plaintiff has met the required showing, a showing that is "not high." (*Overstock.com, Inc. v. Gradient Analytics, Inc., supra,* 151 Cal.App.4th at p. 699.) In the words of the Supreme Court, plaintiff needs to show only a "minimum level of legal sufficiency and triability." (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 438, fn. 5.) In the words of other courts, plaintiff needs to show only a case of "minimal merit." (*Peregrine Funding, Inc. v. Sheppard Mullin*

9

*Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 675, quoting *Navellier[, supra,]* 29 Cal.4th 82, 95, fn. 11.)

" ' . . . As the Supreme Court early on noted, the anti-SLAPP statute operates like a "motion for summary judgment in 'reverse.' " (*College Hospital, Inc. v. Superior Court* (1994) 8 Cal.4th 704, 719.) Or, as that court would later put it, "Section 425.16 therefore establishes a procedure where the trial court evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation. [Citation.]" (*Varian Medical Systems, Inc. v. Delfino* [(2005)] 35 Cal.4th [180,] 192; accord, *Taus v. Loftus* (2007) 40 Cal.4th 683, 714.)

" 'Numerous Courts of Appeal have articulated the test in similar language. (See *Tichinin v. City of Morgan Hill* (2009) 177 Cal.App.4th 1049, 1062 ["a standard 'similar to that employed in determining nonsuit, directed verdict or summary judgment motions' "]; *Yu v. Signet Bank/Virginia* (2002) 103 Cal.App.4th 298, 317 ["plaintiff's burden as to the second prong of the anti-SLAPP test is akin to that of a party opposing a motion for summary judgment"]; *Kyle v. Carmon* (1999) 71 Cal.App.4th 901, 907 ["similar to the standard used in determining motions for nonsuit, directed verdict, or summary judgment"].)' (*Grewal, supra,* 191 Cal.App.4th at pp. 989–990.)

"With those principles in mind, we turn to an analysis of whether [MCC] established a probability that [it] will prevail on [its] claim for malicious prosecution, an analysis we make on de novo review. (*Grewal, supra,* 191 Cal.App.4th at p. 988.) . . . . (*Lanz v. Goldstone, supra*, 243 Cal.App.4th at pp. 456–458.)

**Introduction to the Analysis**

SNG and Ghandour's opening brief has only eight pages of argument, with three arguments, as follows: "The Trial Court's Order Must Be Reversed Because the Court Failed to Properly Address the Favorable Termination Requirement"; "The Trial Court's Order Must Also be Reversed Because MCC Failed to Submit Any Non-Speculative Evidence to Support a Favorable Termination Finding"; and "The Trial Court Also Committed Reversible Error in Its Malice Finding."

As can be gleaned from the statement of issues, appellants focus on what the trial court did, or said, or what it did not do, or say. They also take issue with the court's reliance on the authority it cited. In short, appellants attempt to show where in its order the trial court erred. Such argument is misplaced, as our review is de novo. Put otherwise, what is, or is not, in the order is not the issue before us.

## Denial of the Anti-SLAPP Motion Was Proper

Here, as noted, MCC properly agreed that step one of the SLAPP analysis was met. So, the only issue was whether MCC met its burden under step two, to establish a probability of prevailing on its claim for malicious prosecution. And it did.

"To establish a cause of action for the malicious prosecution of a civil proceeding, a plaintiff must plead and prove that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor [citations]; (2) was brought without probable cause [citations]; and (3) was initiated with malice [citations]." (*Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 50.)

As quoted above, appellants' first two arguments deal with the favorable termination element, the first argument running as follows: "The trial court's Order included no finding that SNG's voluntary dismissal of the MCC cross-claim constituted a termination on the merits in MCC's favor. A termination on the merits by dismissal is favorable when 'it reflects "the opinion of someone, either the trial court or the prosecuting party, that the action lacked merit or if pursued would result in a decision in favor of the defendant." . . . The focus is not on the malicious prosecution plaintiff's opinion of his *innocence*, but on the opinion of the dismissing party.' (*Contemporary Services* [*Corp. v. Staff Pro Inc*. (2007)] 152 Cal.App.4th at 1056-57; *Cantu v. Resolution Trust Corp*., 4 Cal.App.4th 857, 881 (1992).

"Where, as here, the MCC cross-claim [*sic*] was clearly not decided on the merits . . . the appellate court properly 'reviews the reasons why it was dismissed.' *Oprian v. Goldrich, Kest & Associates*, 220 Cal.App.3d 337, 343 (1990); *Robbins v. Blecher*, 52 Cal.App.4th 886, 893 (1997) (it is not enough merely to show that the underlying proceeding was dismissed; '[t]he reasons for the dismissal . . . must be

11

examined to determine whether the termination reflected on the merits); *Eells v. Rosenblum*, 36 Cal.App.4th 1848, 1854-55) (same).

"A voluntary dismissal of a claim to avoid further fees and costs does *not* constitute a termination in the defendant's favor. *Id*. at 345. This is necessarily the case because:

"It is common knowledge that costs of litigation, such as attorneys' fees, costs of expert witnesses, and other expenses have become staggering. The law favors the resolution of disputes. "This policy would be ill-served by a rule which would virtually compel the plaintiff to continue his litigation in order to place himself in the best posture for defense of malicious prosecution action.' *Oprian*, 220 Cal.App.3d at 344-345; *Contemporary Services*, 152 Cal.App.4th at 1057.

"In this case, the trial court's Order, as it relates to the favorable termination requirement, ignored all of the above principles and failed to address the . . . ." And, the argument concludes: "The trial court thus erred, as a matter of law, by failing to make the required analysis of the reasons underlying SNG's dismissal of the MCC cross-claim. The trial court made no determination that SNG's voluntary dismissal without prejudice of that claim was a termination 'on the merits,' as California law requires. *Oprian*, 220 Cal.App.3d at 343; *Robbins*, 52 Cal.App.4th at 893."

We disagree with how appellants state the issue before us, which is this: did MCC demonstrate a probability of prevailing on the element of favorable termination? We also disagree with appellants' view of favorable termination.

In *Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, the trial court granted judgment on the pleadings for the defendant in a malicious prosecution case, holding that dismissal of the underlying action based on the parol evidence rule was not a favorable termination. The Supreme Court reversed, beginning its analysis as follows: "To determine 'whether there was a favorable termination,' we 'look at the judgment as a whole in the prior action . . . .' [Citation.] 'It is not essential to maintenance of an action for malicious prosecution that the prior proceeding was favorably terminated following trial on the merits.' [Citation.] Rather, '[i]n order for the termination of a lawsuit to be

12

considered favorable to the malicious prosecution plaintiff, the termination must reflect the merits of the action and the plaintiff's innocence of the misconduct alleged in the lawsuit.' [Citation.]" (*Id.* at pp. 341–342.)

Our colleagues described it this way: "When the proceeding terminates other than on the merits, the court must examine the reasons for termination to see if the disposition reflects the opinion of the court or the prosecuting party that the action would not succeed." (*Sierra Club Foundation v. Graham* (1999) 72 Cal.App.4th 1135, 1149 (*Sierra Club*).)

And should there be a conflict as to the circumstances of the termination, "the determination of the reasons underlying the dismissal is a question of fact." (*Ross v. Kish* (2006) 145 Cal.App.4th 188, 198.) In light of this, it is perhaps enough to say that under the reverse summary judgment analysis required under the anti-SLAPP law, this ends the matter. But even if not, the termination here was favorable to MCC.

We begin with the fundamental principle, illustrated, for example, by this statement from Witkin: "A voluntary dismissal, even one without prejudice, reflects on the merits. Although not res judicata, it is generally a favorable termination. (*MacDonald v. Joslyn* (1969) 275 [Cal.App.]2d 282, 289, supra, § 488; *Weaver v. Superior Court* (1979) 95 [Cal.App.]3d 166, 185 . . . ." (5 Witkin, Summary of Cal.Law (10th ed. 2005) Torts, §501, p. 735.) Many cases reflect the rule (see, e.g., *Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1539), including in the anti-SLAPP setting. (*Oviedo v. Windsor Twelve Properties, LLC* (2012) 212 Cal.App.4th 97, 113; and *Sycamore Ridge Apartments LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1399.)

To the extent that appellants assert that they dismissed the cross-complaint for economic reasons, we note that there is no factual showing to support such assertion, not even in Ghandour's lengthy declaration. Absent such evidence, the argument cannot prevail. (See *Jay v. Mahaffey, supra,* 218 Cal.App.4th at pp. 1539–1540 [commercial lessors' dismissal of cross-complaint against lessee's limited partners was favorable termination for limited partners, as there was no evidence supporting lessors' claim that

13

dismissal was for economic reasons.]; also see *Drummond v. Desmarais* (2009) 176 Cal.App.4th 439, 456–457.)

The second element of a malicious prosecution claim is lack of probable cause. If there is " 'no dispute as to the facts upon which an attorney acted in filing the prior action, the question of whether there was probable cause to institute that action is purely legal.' [Citation.] 'The resolution of that question of law calls for the application of an *objective* standard to the facts on which the defendant acted.' [Citation.]" (*Daniels v. Robbins, supra*, 182 Cal.App.4th at p. 222.) So, it is often said that "the existence or absence of probable cause has traditionally been viewed as a question of law to be determined by the court, rather than a question of fact for the jury. . . . [¶] . . . [It] requires a sensitive evaluation of legal principles and precedents, a task generally beyond the ken of lay jurors . . . ." (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 875 (*Sheldon Appel*).)

On the other hand, when there is a dispute as to the state of the defendant's knowledge and the existence of probable cause turns on resolution of that dispute, there becomes a fact question that must be resolved before the court can determine the legal question of probable cause. (See *Sheldon Appel, supra*, 47 Cal.3d at p. 881 ["[T]he jury must determine what facts the defendant knew . . . ."].) Here, there is necessarily a "dispute" as to the state of appellants' knowledge before they filed the cross-complaint, especially as attorney Adams put in no evidence to show what he knew, or what research he did, or even to whom he spoke.

There is also affirmative evidence, including that attorneys at Winston & Strawn notified appellants' counsel in writing four times—once before and thrice after the underlying litigation was filed—that MCC was not a proper party. Despite that, appellants filed and continued the action until it had resolved the foreclosure action.

Moreover, appellants have never produced any writing or communication in either the underlying litigation or the malicious prosecution case reflecting that a DPO agreement was agreed upon, nor provided one piece of documentation to show that MCC

14

had an interest in—indeed, any connection to—the loan.  Finally, and as noted by the trial court and detailed above, Ghandour admitted in his e-mails prior to the filing of the cross-complaint that no DPO agreement existed.

The final question is whether MCC showed a probability of prevailing on the third element of its malicious prosecution claim, malice.

Malice in connection with malicious prosecution " 'relates to the *subjective intent or purpose* with which the defendant acted . . . .' " (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 292.)  Malice " 'may range anywhere from open hostility to indifference' "; it is not limited to " 'ill will toward plaintiff but exists when the proceedings are [prosecuted] primarily for an improper purpose.' " (*Ibid.*; accord, *Sierra Club, supra,* 72 Cal.App.4th at p. 1157.)  As an element of malicious prosecution, malice "reflects the core function of the tort, which is to secure compensation for harm inflicted by misusing the judicial system, i.e., using it for something other than to enforce legitimate rights and secure remedies to which the claimant may tenably claim an entitlement." (*Drummond v. Desmarais, supra,* 176 Cal.App.4th at pp. 451–452, italics omitted.)

As *Sierra Club* elaborated:  "Suits with the hallmark of an improper purpose are those in which:  ' " . . . (1) the person initiating them does not believe that his claim may be held valid; (2) the proceedings are begun primarily because of hostility or ill will; (3) the proceedings are initiated solely for the purpose of depriving the person against whom they are initiated of a beneficial use of his property; (4) the proceedings are initiated for the purpose of forcing a settlement which has no relation to the merits of the claim." ' [Citation.]" (*Sierra Club, supra,* 72 Cal.App.4th at p. 1157.)

Since malice concerns actual mental state, it necessarily presents a question of fact.  (*Sheldon Appel, supra,* 47 Cal.3d at p. 874.)  Particularly apt here, a SLAPP case with its reverse summary judgment analysis, is this observation by the dissenting justice in *Crowley v. Katleman* (1994) 8 Cal.4th 666, 696:  "malice is such a highly factual issue that it often precludes summary disposition."  (dis. opn. of Arabian, J.)  Indeed it does,

15

especially here, where the record contains abundant evidence to support MCC on the issue of malice.

To begin with, there is no evidence that attorney Adams did anything to research the applicable facts, or applicable law, before filing the cross-complaint seeking $300 million in damages. This indicates a degree of indifference from which one could infer malice. (*Sycamore Ridge Apartments, LLC v. Naumann, supra,* 157 Cal.App.4th at p. 1409; see *Sheldon Appel, supra*, 47 Cal.3d at p. 883 ["if the trial court determines that the prior action was not objectively tenable, the extent of a defendant attorney's investigation and research may be relevant to the further question of whether or not the attorney acted with malice"].)

As detailed above, appellants were notified no fewer than four different times that MCC was the wrong entity to sue. Apparently upset because Fourth Third initiated a foreclosure action, appellants alleged fraud against MCC claiming that it had entered into a DPO agreement. Not only was this unequivocally denied by MCC's key witnesses, as the trial court found Ghandour's contemporaneous e-mail correspondence directly contradicted Ghandour's statements under oath. In short, there is evidence that would support that appellants knew that no DPO agreement existed—and that MCC was the wrong entity to sue.

In addition, appellants issued the misleading press release, with its misleading headline, naming MCC first, highlighting the fraud claim seeking punitive damages, not to mention $300 million in actual damages. This too is evidence of malice.

## DISPOSITION

The order is affirmed. MCC shall recover its costs on appeal.

16

_____
Richman, J.

We concur:


_____
Kline, P.J.


_____
Stewart, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MEDLEY CAPITAL CORPORATION,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SECURITY NATIONAL GUARANTY,<br>INC. et al.,<br><br>    Defendants and Appellants. | A147726<br><br>(San Francisco County<br>Super. Ct. No. CGC15547788)<br><br>**ORDER CERTIFYING OPINION**<br>**FOR PUBLICATION** |

THE COURT:

The opinion in the above-entitled matter filed on October 17, 2017, was not certified for publication in the Official Reports. For good cause, the requests for publication are granted.

Pursuant to California Rules of Court, rules 8.1105 and 8.1120, the opinion in the above-entitled matter is ordered certified for publication in the Official Reports. Listing of counsel for the Official Reports is attached hereto.


Dated: _____          _____

                                                                            Acting P.J.


1

Trial Court:                                San Francisco Superior Court

Trial Judge:                                Honorable Ernest H. Goldsmith

Attorney for Plaintiff and Respondent:      Joseph & Cohen, Jonathan M. Cohen,
                                            Nicole P. Dogwill.

Attorneys for Defendants and Appellants:    Jeffer, Mangels, Butler & Mitchell, Mark
                                            Stephen Adams, Susan Allison.