Filed 11/24/25 Sanchez v. Thompson CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| CARISSA SANCHEZ et al., | B334619 |
| Plaintiffs and Appellants | (Los Angeles County Super. Ct. No. BC622709) |
| v. | |
| JAMES P. THOMPSON, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kristin S. Escalante, Judge. Affirmed.

Campbell & Farahani, Frances M. Campbell and Nima Farahani for Plaintiffs and Appellants.

No appearance for Defendant and Respondent.

————————————————

Defendant James P. Thompson, as the attorney for Carol Burch, filed three successive unlawful detainer actions seeking to evict plaintiffs and appellants Carissa Sanchez and Ramielyn Milo from the Santa Monica apartment plaintiffs rented from Burch. In the unlawful detainer actions, the complaints filed by Thompson alleged that plaintiffs violated their lease and Santa Monica law by subleasing a portion of the apartment on a short-term basis via Airbnb. All three unlawful detainer actions ended in favor of the tenants, who then filed suit against Thompson and others[1] for violating Santa Monica's tenant harassment ordinance, alleging Thompson sought to evict them despite knowing there was no basis for doing so. Before the trial court, both sides agreed that plaintiffs' case was equivalent to an action for malicious prosecution, and that Thompson's liability for violating the ordinance depended on plaintiffs' proving he lacked probable cause for filing the unlawful detainer actions.

After a bench trial on the issue of probable cause, the court entered judgment in favor of Thompson. Although Santa Monica law does not allow tenants to be evicted for illegal use of a property unless they have been convicted of a crime for doing so (see Santa Monica Rent Control Charter Amend., § 1806(a)(6)) (Charter Amendment section 1806), the court determined that an attorney might reasonably conclude that state law preempted Santa Monica law on this issue, and Thompson therefore had probable cause to file suit.

---

[1] The other named defendants were Burch and Burch's property manager, Miller & Desatnik Management Co., Inc. (Miller & Desatnik). Burch and Miller & Desatnik are not parties to this appeal.

Plaintiffs now challenge that conclusion. They argue that Thompson lacked probable cause for seeking to evict them for breaching their lease, and that the trial court erred by finding Thompson had a tenable argument for preemption. In addition, they contend their Airbnb activity at most amounted to a regulatory violation, not an unlawful use of the property sufficient to justify eviction. Finally, they contend the trial court erred by justifying its finding of probable cause in part on another superior court judge's conclusion that state law preempted Santa Monica's restriction on evictions for illegal activity. We find plaintiffs' arguments unpersuasive and affirm.

## FACTS AND PRIOR PROCEEDINGS

### A.     Trial Court Proceedings

On June 9, 2016, plaintiffs filed a complaint alleging that Thompson and Burch violated the Santa Monica tenant harassment ordinance by seeking to evict them from their apartment without justification.[2]

Thompson filed a special motion to strike the complaint under the anti-SLAPP statute (Code Civ. Proc., § 416.25).[3] He argued plaintiffs' complaint was based on activity protected by the statute, i.e., his filing of the unlawful detainer actions, and that plaintiffs could not show a probability of prevailing on the merits because, among other reasons, the Santa Monica

---

[2] The complaint also alleged retaliation by a landlord in violation of Civil Code section 1942.5 against Burch and Miller & Desatnik. Because those defendants are not party to this appeal, we do not address that portion of the complaint.

[3] Unspecified statutory references are to the Code of Civil Procedure.

3

ordinance restricting eviction on the basis of illegal activity was preempted by state landlord-tenant law (§ 1161, subd. (4)).

The trial court (Judge Barbara A. Meiers) granted the anti-SLAPP motion. The court agreed with Thompson that state law preempted Santa Monica's restriction on evictions based on illegal activity because the ordinance imposed an additional procedural barrier to eviction not included in the state unlawful detainer statutes.

We reversed. We concluded that "plaintiffs' complaint sets forth facts stating a cause of action for malicious prosecution, and plaintiffs have demonstrated a probability of prevailing on that cause of action." (*Sanchez v. Thompson* (June 12, 2018, B279708) [nonpub. opn.].) Our opinion did not address the issue of preemption. Instead, we reasoned that plaintiffs had "shown a probability of establishing that Thompson lacked probable cause to file the third unlawful detainer action after the court sustained plaintiffs' demurrer in the first action on the merits and Thompson could not cure the defect by amendment. To the extent Thompson believed the court's ruling in the first unlawful detainer action was incorrect, his recourse was to appeal the ruling, not file duplicate unlawful detainer actions against plaintiffs, hoping to achieve a different result for his client." (*Ibid.*) Furthermore, "[p]laintiffs also made a prima facie showing of malice, sufficient to establish a probability of prevailing on a malicious prosecution claim. A reasonable inference from the evidence is that Thompson filed the third unlawful detainer action knowing it lacked probable cause (after his client's defeat in the first action) to see if plaintiffs would give up and vacate the apartment, as plaintiffs allege in the complaint—i.e., for an improper purpose." (*Ibid.*)

4

After our reversal of the order granting the special motion to strike, proceedings resumed in the trial court, and the case was assigned to Judge Kristin S. Escalante. The parties agreed to bifurcate the case, beginning with a bench trial on the issue of probable cause. If plaintiffs succeeded in showing that Thompson lacked probable cause to bring the unlawful detainer claims, the case would proceed to a jury trial on the remaining issues.

## B. Bench Trial Findings of Fact

In its statement of decision at the conclusion of the bench trial, the court described the facts of the case as follows. Plaintiffs raise no substantial evidence challenge to these factual findings; on appeal they dispute only the legal implications that flow from them.

"Ms. Sanchez testified she leased a two-level unit in Santa Monica at 519 Idaho Avenue, Number 4 . . . . Paragraph 14 of the rental agreement provided: 'Tenant shall not let or sublet all or any part of the premises, or assign this lease or any interest in it without the prior written consent of the [l]andlord. This includes any and all roommate changes.'

"Ms. Sanchez lived in the unit with her roommate plaintiff Ramielyn Milo, who had been approved by the landlord. The top floor contained Ms. Sanchez's bedroom, the common areas, and kitchen. The downstairs had a separate entrance. It was about the size of a studio apartment and had Ms. Milo's bedroom and her bathroom.

"Ms. Sanchez and Ms. Milo listed the downstairs portion of the apartment on Airbnb. The upstairs portion was not part of the Airbnb rental. Ms. Milo stayed at her boyfriend's when her portion of the apartment was rented by an Airbnb patron. Ms. Sanchez and Ms. Milo rented out the downstairs portion of the

5

apartment approximately four times, each time for a few days. They did this for about a month prior to October 8, 2015. Either Ms. Sanchez or Ms. Milo [was] staying in the upstairs portion when Airbnb patrons rented out the downstairs portion of the unit.

"Ms. Sanchez did not seek or obtain a business license before renting the property out on Airbnb and did not collect or remit any occupancy tax.

"On October 8, 2015, . . . Thompson, an attorney, sent a three-day notice to cease to Ms. Sanchez and Ms. Milo. The notice was sent to 505 Idaho Ave., #4, which was the wrong address. It said:

" 'Please take notice that your occupancy . . . may be terminated after service of this notice upon you and you may be required to quit and surrender possession . . . no later than three (3) days after service of a subsequently served notice to terminate on you.

" 'This is intended as notice to cease activity and/or remedy breaches of your rental agreement and violations of law. This notice is being served upon you for the reason or reasons below:

" '1. Unlawful assignment and/or sublet of subject premises to vacation renters without any consent from landlord in violation of [p]aragraph 14 of your [r]esidential [l]ease [a]greement . . . .

" '2. Violation of Law/ using the premises for an unlawful activity: Santa Monica Municipal Code, [a]rticle 6 which requires a business license for home sharing; and [a]rticle 9 which requires that the host also be in the home or rental unit at the same time as the home sharing; and that the [c]ity of Santa

6

Monica requires the payment of a "[t]ransient [t]ax" by the host for home sharing.'

"The notice then explained the basis for the property manager's conclusion that the property had been used as an Airbnb rental, including that the property manager had observed a lock box on the front door; had seen unauthorized visitors with suitcases entering and exiting the property; had asked the visitors why they are entering the unit and the visitors had responded they had rented it on Airbnb; and the property manager had located an advertisement for the property on Airbnb for a vacation rental of the unit.

"The notice then stated: 'In accordance with the requirements of Santa Monica Municipal Code section 1906(b), you are required to cease and remedy the above-described violations of your rental agreement and/or law, including but not limited to permanent removal of the lockbox from the front door of the rental unit; permanent cessation of advertising and subletting unit.'

"The notice was signed by Mr. Thompson.

"Ms. Sanchez and Ms. Milo received the notice on October 15, 2015, and stopped offering the unit on Airbnb immediately.

"On October 22, 2015, Ms. Sanchez and Ms. Milo were served with a three-day notice to terminate, purportedly served under . . . section 1161, subdivision 4. It stated in relevant part:

" 'Please take notice that your occupancy of the above-described premises is hereby terminated as of the date three (3) days after service of this notice upon you are and you are hereby required to quit and surrender possession thereof to the

undersigned no later than three (3) days after service of this notice upon you.

"'This is intended as a three (3) day legal notice for the purpose of terminating your tenancy in accordance with . . . section 1161[, subdivision ](4). This notice is being served upon you for the reasons below:

"'1. Unlawful assignment and/or sublet of subject premises to vacation renters without any consent from landlord in violation of [p]aragraph 14 of your [r]esidential [l]ease [a]greement dated 5/20/12 . . . .

"'2. Violation of Law/ using the premises for an unlawful activity: Vacation Rental. Santa Monica Municipal Code, [a]rticle 6.20.030 prohibits vacation rentals/ transient occupancy: "No person . . . shall undertake, maintain, authorize, aid, facilitate or advertise any Vacation Rental Activity." [']

"The notice was again signed by Mr. Thompson.

"On November 20, 2015, Mr. Thompson filed an unlawful detainer lawsuit on behalf of his clients against Ms. Sanchez and Ms. Milo. The lawsuit was based on the October 22, 2015 notice to terminate. The action was dismissed after the court sustained a demurrer. The demurrer and the unlawful detainer court's ruling were not introduced into evidence in the present trial, and there was no evidence presented as to their contents.

"On January 11, 2016, Thompson served a new 3-day notice to terminate. The heading on the notice stated: '3-day Notice to Terminate ([§] 1161[, subd. ](4)) (Unlawful Purpose); [Charter Amendment section] 1806(a)(4) (Use for any illegal purpose); [Santa Monica Municipal Code part] 6.20.030 (Vacation Rental).' The body of the notice stated in relevant part:

8

" 'Please take notice that your occupancy of the above-described premises is hereby terminated as of the date three (3) days after service of this notice upon you are and you are hereby required to quit and surrender possession thereof to the undersigned no later than three (3) days after service of this notice upon you.

" 'This is intended as a three (3) day legal notice for the purpose of terminating your tenancy in accordance with . . . section 1161[, subdivision ](4). This notice is being served upon you for the reasons below:

" '2. Violation of Law/ using the premises for an unlawful activity: Vacation Rental. Santa Monica Municipal Code, [a]rticle 6.20.030 prohibits vacation rentals/ transient occupancy: "No person . . . shall undertake, maintain, authorize, aid, facilitate or advertise any Vacation Rental Activity."

" 'On or about October 2, 2015, [p]roperty manager Erin Burch . . . observed many unauthorized visitors with suitcases entering and exiting the subject unit. The [m]anager asked the visitors why and how these visitors were entering the unit and was informed that they had rented the unit on a day/vacation basis on Airbnb from "Ramie" for vacation rental of the unit.'

"The notice was again[ ] signed by Mr. Thompson.

"On January 22, 2016, Mr. Thompson filed a second unlawful detainer action against Ms. Sanchez and Ms. Milo. The action was based on the January 11, 2016 notice. The action was voluntarily dismissed after a demurrer was served (but not filed). Again, the demurrer is not in evidence. There is no evidence as to the content of the demurrer.

"On March 22, 2016, Mr. Thompson filed a third unlawful detainer action. This action was also based on the January 11,

9

2016 notice.  The demurrer to the complaint was sustained with leave to amend and was subsequently dismissed when no amended complaint was filed.  Again, there is no evidence as to the content of the demurrer or the ground on which it was sustained."

## C.    The Trial Court's Decision

Based on these facts, the trial court found that "plaintiffs failed to establish that . . . Thompson lacked probable cause in instituting the first, second and/or third unlawful detainer actions.  The court thus finds in favor of [Thompson] and against plaintiffs."

Although the Santa Monica charter forbids evictions based on a tenant's "using or expressly permitting a controlled rental unit to be used for any illegal purpose" unless the tenant is "convicted" of such an offense (Charter Amend., § 1806(a)(4)), the court reasoned that Thompson had probable cause to file an unlawful detainer action against plaintiffs because a reasonable attorney could have believed there was a tenable claim that that provision of the charter was preempted by state law.

The court supported its conclusion regarding probable cause with a survey of cases on the preemption of local law in eviction matters, which we now set forth.  The state unlawful detainer statutes (§ 1161 et seq.) establish procedures a landlord must follow when seeking to evict a tenant.  In *Birkenfeld v. City of Berkeley* (1976) 17 Cal.3d 129, the Supreme Court held that municipal laws altering these procedures or imposing new procedures for evictions interfere with and are preempted by state law.  On the other hand, because the state statutes are procedural in nature, they do not prevent local governments from creating new substantive defenses to an unlawful detainer action.

10

(*Id.* at pp. 147-152.)  Thus, the city of Berkeley's charter amendment requiring a landlord to obtain a certificate of eviction from the local rent control board prior to initiating an unlawful detainer action was preempted because it "raise[d] procedural barriers between the landlord and the judicial proceeding."  (*Id.* at p. 151, fn. omitted.)  On the other hand, the city's ban on evicting tenants in good standing upon the end of their lease term was not preempted because it created a substantive defense to eviction.  (*Id.* at p. 152.)

In *Rental Housing Assn. of Northern Alameda County v. City of Oakland* (2009) 171 Cal.App.4th 741, the court applied *Birkenfeld* to an Oakland ordinance that "limit[ed] a landlord's right to initiate an eviction due to certain tenant conduct by requiring that the specified conduct continue after the landlord provides the tenant written notice to cease."  (*Rental Housing Assn.*, *supra*, at pp. 762-763.)  The court held that "[t]hese notice requirements . . . regulate the substantive grounds for eviction, rather than the procedural remedy available to the landlord once grounds for eviction have been established.  If the tenant ceases the offending conduct once notified by the landlord, there is no good cause to evict.  The requirements for a warning notice are therefore not preempted by the unlawful detainer statutes."  (*Id.* at p. 763, fn. omitted.)  The court differentiated the warning notice required in Oakland from the certificate of eviction in *Birkenfeld* on the ground that "the warning notice requirements of [the Oakland ordinance] do not involve prefiling review by a local administrative agency or impose 'elaborate prerequisites' on the commencement of an unlawful detainer proceeding."  (*Rental Housing Assn.*, *supra*, at p. 763.)

11

The trial court also analyzed *San Francisco Apartment Assn. v. City and County of San Francisco* (2018) 20 Cal.App.5th 510, which involved a San Francisco ordinance barring certain forms of no-fault eviction during the school year at units where a child under the age of 18 or an educator resided. (See *id.* at p. 513.) In analyzing this ordinance, the *San Francisco Apartment Assn.* court recognized that the distinction between procedural and substantive defenses is " ' " 'shadowy and difficult to draw' in practice" ' " and "elusive at best." (*Id.* at p. 516 & fn. 2.) Ultimately, however, the *San Francisco Apartment Assn.* court concluded the ordinance was primarily substantive and thus not preempted. Although it "has a procedural *impact*, limiting the timing of certain evictions," the primary function of the law was to give tenants who belonged to a protected class "a substantive defense to eviction." (*Id.* at p. 518.)

After reviewing this case law, the trial court turned to the case at hand. In the court's view, Thompson's argument for preemption "would almost certainly be a losing argument" on the merits. The Santa Monica charter amendment at issue "effectively eliminates use of a property for an illegal purpose as a ground for eviction, except in the very rare circumstance in which a tenant is criminally convicted of such use," and a court applying *Rental Housing Assn.*, *San Francisco Apartment Assn.*, and similar cases would most likely view it as a permissible elimination of a substantive ground for eviction. In addition, the trial court noted that it is difficult to categorize the Santa Monica law as creating a procedural hurdle to eviction "because a landlord has no ability to file criminal charges against a tenant to obtain a conviction."

12

Nevertheless, the court concluded Thompson's position that preemption applied was not untenable or frivolous. The court noted that the issue was a matter of first impression, in that "no court has applied the [substantive vs. procedural] standard to the provision at issue here or to any substantially similar provision. A conclusion that an argument is untenable or frivolous is essentially an argument that a litigant should not be permitted to even raise the issue in court. There are strong policy arguments for allowing issues of first impression to be argued and determined in court, even if the outcome seems relatively clear based on analogous precedent."

In addition, the trial court echoed statements in prior case law that the distinction between procedural and substantive defenses is " ' " 'shadowy and difficult to draw' in practice" ' " and "elusive at best." (*San Francisco Apartment Assn. v. City and County of San Francisco, supra,* 20 Cal.App.5th at p. 516 & fn. 2.) The trial court stated that the Santa Monica restriction on evictions for illegal conduct has some characteristics of a procedural restriction "because before the use of an illegal purpose can be used as a ground for eviction, certain procedural events have to occur. Specifically, a prosecuting body has to file criminal charges and prosecute to conviction. And the fact that the landlord has no control over such procedures arguably makes the procedural hurdles even greater than those at issue in *Birkenfeld.*"

Next, the court noted that apart from *Birkenfeld* itself, the cases developing the procedural-substantive distinction were all decided by the Court of Appeal. "While the superior court is bound by Court of Appeal decisions, sister districts or divisions of the Court of Appeal are not so bound and may decline to follow

13

other Court of Appeal decisions." To the extent a case like *Rental Housing Assn.* strongly suggested Thompson's position was incorrect, on appeal Thompson "could credibly argue that [it] was wrongly decided under *Birkenfeld*."

Finally, the court noted that Judge Meiers, who granted Thompson's anti-SLAPP motion, agreed with Thompson that the Santa Monica charter amendment was preempted. Judge Meiers concluded that barring a landlord from evicting a tenant for illegal use of a property without proof of a criminal conviction was functionally identical to the requirement to obtain a certificate of eviction before filing an unlawful detainer, the restriction that the court in *Birkenfeld* held to be preempted. The trial court reasoned that "[t]he fact that Judge Meiers ruled that way establishes plaintiffs cannot prove all 'reasonable attorney[s] would agree' Thompson's preemption argument is 'totally and completely without merit' because a [s]uperior [c]ourt judge accepted the argument."

The trial court addressed two additional issues. First, the court addressed plaintiffs' argument that, regardless of whether the Santa Monica restriction on evictions was preempted, there was no reasonable basis for seeking to evict plaintiffs because their Airbnb activities did not constitute "using the premises for an unlawful purpose" (§ 1161, subd. (4)). The Santa Monica Municipal Code distinguishes between a "Vacation Rental," in which a resident rents out all or a part of a dwelling unit "for *exclusive* transient use of 30 consecutive days or less" (Santa Monica Mun. Code, former pt. 6.20.010(c), italics added),[4] and

---

[4] This section of the Santa Monica Municipal Code has subsequently been amended in ways not relevant to this opinion.

14

"Home-Sharing," in which "residents host visitors in their homes, for compensation, for periods of 30 consecutive days or less, while at least one of the dwelling unit's primary residents lives on-site, in the dwelling unit, throughout the visitors' stay." (*Id.*, former pt. 6.20.010(a).) Vacation rentals are forbidden under the code, whereas home-sharing is permitted if the resident obtains a license for doing so.

Plaintiffs argued that their listing fit the definition of home-sharing and, thus, they had done nothing more than fail to obtain a license. The trial court found that Thompson could have made a tenable argument to the contrary: "a landlord could tenably argue that [the] plaintiffs' activity did not constitute 'home-sharing' at all, but instead fell within the [c]ity's general ban on short-term vacation rentals. Plaintiffs testified that they rented out the downstairs portion of the unit only, which had its own bedroom, bathroom, and separate entrance. They did not rent out the upper portion of the unit, which had the shared living spaces and Ms. Sanchez's bedroom and bathroom. Thus, the Airbnb subtenants were not sharing common living spaces with any permanent residents; instead, they had the exclusive use of a separate portion of the property with its own separate entrance. A persuasive argument could be made that the term 'home-sharing' as used in the ordinance contemplates that the subtenants will be inhabiting common living space with the permanent residents, and that the Airbnb rentals at issue here do not qualify because they do not advance the stated purpose of the exception to the ban on Airbnb rentals for 'home-sharing.' . . .

_____

(See Santa Monica Ord. Nos. 2616 & 2748, amending & revising ch. 6.20 of Santa Monica Mun. Code.)

Even if not persuasive, such an argument would be, at the very least, tenable."

Finally, the trial court addressed an issue suggested by our opinion reversing Judge Meiers's grant of Thompson's anti-SLAPP motion, i.e., that Thompson's remedy when the trial court sustained the demurrer to his first unlawful detainer action was to appeal, and that he had no tenable basis for filing a second or third unlawful detainer action.

The court explained that plaintiffs had not argued that Thompson's second and third unlawful detainer filings were frivolous for this reason. Indeed, "in the trial of the present matter, no evidence was presented regarding the bases for the demurrers in any of the unlawful detainer actions or the court's ruling on the demurrers. There was no evidence presented about anything that happened at the hearings on the demurrers." The court continued: "Accordingly, based on the record presented at the trial, the court cannot conclude that the second and third actions were not tenable because they were barred by any preclusive effect disposition of the first action. It is possible, for example, that the trial court sustained the demurrer in the first action because of technical problems with the initial notices, including the fact that one of the notices attached to the complaint had the wrong address on it."

## DISCUSSION

### A. Standard of Review and Legal Background

" 'In reviewing a judgment based upon a statement of decision following a bench trial, we review questions of law de novo. [Citation.] We apply a substantial evidence standard of review to the trial court's findings of fact. [Citation.] Under this deferential standard of review, findings of fact are liberally

16

construed to support the judgment and we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings.' " (*Lopez v. La Casa de Las Madres* (2023) 89 Cal.App.5th 365, 378, quoting *Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.)

Plaintiffs argue, and we agree, that, although they alleged a violation of the Santa Monica tenant harassment ordinance, their case is in essence a malicious prosecution matter, and the issue in this appeal is whether the trial court erred in finding that Thompson had probable cause to bring the unlawful detainer actions. "We apply the same legal precepts the trial court does in assessing probable cause. A litigant will lack probable cause if he or she either (1) ' "relies upon facts which he has no reasonable cause to believe to be true," ' *or* (2) ' "seeks recovery upon a legal theory which is untenable under the facts known to him." ' " (*Green Tree Headlands LLC v. Crawford* (2023) 97 Cal.App.5th 1242, 1257.) This is a "low standard" (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 826) and, in general, "the tort [of malicious prosecution] is disfavored both because of its 'potential to impose an undue "chilling effect" on the ordinary citizen's willingness to report criminal conduct or to bring a civil dispute to court' [citation] and because, as a means of deterring excessive and frivolous lawsuits, it has the disadvantage of constituting a new round of litigation itself." (*Id.* at p. 817.)

To the extent the facts are undisputed, " ' "the question of whether there was probable cause to institute [an] action is purely legal" ' " (*Medley Capital Corp. v. Security National Guaranty, Inc.* (2017) 17 Cal.App.5th 33, 47-48), and "[o]ur review is de novo." (*Roche v. Hyde* (2020) 51 Cal.App.5th 757, 794.) We apply a more deferential standard to factual questions,

however, because "[w]e do not literally sit in the same seat the trial court does when making th[e probable cause] assessment on appeal, [and] there can sometimes be antecedent factual issues a trier of fact must decide concerning what the malicious prosecution defendant knew or should have known upon filing suit." (*Green Tree Headlands LLC v. Crawford, supra*, 97 Cal.App.5th at p. 1257; accord, *Medley Capital Corp., supra*, at p. 48.)

## B.    Plaintiffs Forfeited Any Claim Based on Eviction for Breach of Lease

As described above, the primary issue before the trial court in deciding probable cause was whether a reasonable attorney could conclude that the Santa Monica law restricting evictions on the basis of illegal activity was preempted by state law. In their appellate brief, plaintiffs argue that Thompson lacked probable cause for a different reason that they did not litigate below. They note that, in the unlawful detainer complaints, Thompson sought to evict plaintiffs not only because they had engaged in illegal activity, but also because they breached their lease, which forbade subletting.

Under Santa Monica law, a landlord may not evict a tenant for breaching her lease unless "[t]he tenant has continued, *after written notice to cease*, to commit" the breach. (Charter Amend., § 1806(a)(2), italics added.) The trial court found that "Ms. Sanchez and Ms. Milo received the notice [to desist from listing the unit] on October 15, 2015, and stopped offering the unit on Airbnb immediately," and as far as we have seen, Thompson never argued otherwise.

Plaintiffs argue Thompson must have known Santa Monica law prevented him from evicting them on the basis of breach of

lease. Nor was there a claim that this provision of the law was preempted. During a hearing at the conclusion of the bench trial, the trial court asked Thompson's attorney, "there's no argument that [Charter Amendment section 1806(a)(2)] is preempted so we're never going to be in a land where [it] does not apply, right?" Thompson's attorney responded, "Correct." In plaintiffs' view, this shows Thompson lacked probable cause for seeking to evict them for breaching their lease. Plaintiffs argue further that this alone should have been sufficient to give them victory at the bench trial. (See *Crowley v. Katleman* (1994) 8 Cal.4th 666, 671 ["a suit for malicious prosecution lies for bringing an action charging multiple grounds of liability when some but not all of those grounds were asserted with malice and without probable cause"], citing *Bertero v. National General Corp.* (1974) 13 Cal.3d 43.)

We need not address this argument because, as plaintiffs conceded during oral argument, they failed to present it before the trial court. As a result, they forfeited it. " 'As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal; appealing parties must adhere to the theory (or theories) on which their cases were tried. This rule is based on fairness—it would be unfair, both to the trial court and the opposing litigants, to permit a change of theory on appeal . . . .' " (*Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 997.) If plaintiffs had squarely presented an argument that Thompson lacked probable cause to seek to evict them for breaching their lease, Thompson and his attorney might have chosen an entirely different defense strategy. At a minimum they would have had an opportunity to present evidence and argument on this claim, and the trial court would

19

have had a chance to address it. After having proceeded through bench trial on one theory, plaintiffs cannot now argue for the first time on appeal that we should award them victory on a new and different theory. " ' "Bait and switch on appeal not only subjects the parties to avoidable expense, but also wreaks havoc on a judicial system too burdened to retry cases on theories that could have been raised earlier." ' " (*Nellie Gail Ranch Owners Assn., supra,* at p. 997.)

## C. Plaintiffs Have Failed to Demonstrate the Trial Court Erred in Its Conclusion on Preemption

Plaintiffs' appellate brief contains a detailed analysis of case law in support of the proposition that "[s]ection 1806(a)(4) of the . . . Charter Amendment is not preempted by . . . section 1161[, subdivision ](4)." The trial court largely agreed with that assessment, writing in its statement of decision that "[i]f a court were to consider this on the merits . . . , Thompson's argument [for preemption] would almost certainly be a losing argument." The court then clarified, "But that is not the question here. The question here is whether the argument is so utterly lacking in merit—i.e., frivolous—that a litigant should not be permitted to even raise it."

The trial court's observation about the question to be addressed was correct, and plaintiffs mostly ignore this key question in their brief. Although they argue at length in favor of their view on preemption, they do not respond at all to the trial court's reasoning as to why the opposing position, even if unlikely to succeed on the merits, was not frivolous. "[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to

20

the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.) By failing even to address the trial court's arguments, plaintiffs have failed to meet that burden. In any event, we find no fault with the trial court's reasoning. The distinction between substantive and procedural restrictions on evictions is indeed often difficult to draw, and to the best of our knowledge, no published opinion has addressed the validity of a restriction like the one at issue here.

Nor do we agree with plaintiffs' contention that the trial court adopted a standard "of legal tenability . . . so broad that all malicious prosecution cases based on lack of legal tenability would be eliminated if [it] were imposed." Plaintiffs' claim is based on a colloquy during closing arguments during which the trial court asked the parties questions about the case and expressed tentative views about what constituted a tenable legal argument on the issue of preemption; their claim is not based on the court's actual statement of decision, which plaintiffs essentially ignore. Statements of preliminary views are irrelevant in light of the court's subsequent statement of decision. (*Burbank-Glendale-Pasadena Airport Authority v. Hensler* (1991) 233 Cal.App.3d 577, 591 [a court's comments before a final ruling "may never be used to impeach" that ruling].) The purpose of the statement of decision is to give the trial court "an opportunity to place upon [the] record, in definite written form, its view of the facts and the law of the case." (*Whittington v. McKinney* (1991) 234 Cal.App.3d 123, 127.) It " 'is our touchstone to determine whether or not the trial court's decision is supported by the facts and the law.' " (*In re Marriage of Starr* (2010) 189 Cal.App.4th 277, 287.) Plaintiffs' failures to cite the statement of decision and

21

to seek to rebut its findings suggest plaintiffs have no basis for challenging the court's analysis and conclusions regarding *Birkenfeld* and the subsequent cases on state preemption of local eviction laws.

## D. The Trial Court Did Not Err by Placing Undue Emphasis on Another Jurist's Views

Plaintiffs contend the trial court erred by basing its finding of probable cause in part on Judge Meiers's determination when deciding the anti-SLAPP motion that Santa Monica's restriction on evictions for illegal activity was preempted by state law. Because probable cause is an objective standard, plaintiffs argue "the trial [court] should have looked to the merits of the underlying [unlawful detainer] actions from a reasonable attorney's perspective, and determined for itself whether any reasonable attorney would have considered the three repetitive . . . actions meritorious, rather than considering what the earlier-assigned jurist in this case thought about the preemption issue raised for the first time in the malicious prosecution case."

This is a false distinction. Probable cause is indeed an objective standard, in that it depends not on "whether the attorney bringing the prior action believed the case was tenable," but rather on whether " 'any reasonable attorney would have thought the claim tenable.' " (*Wilson v. Parker, Covert & Chidester*, *supra*, 28 Cal.4th at p. 817.) We are as aware as anyone that trial judges (as well as appellate justices) are not infallible, but it would be bizarre to hold that actual success in convincing a judge of the merits of an argument is irrelevant to whether a reasonable attorney would think a claim is tenable. (Cf. *id* at p. 818 ["Claims that have succeeded at a hearing on the merits, even if that result is subsequently reversed by the trial or

22

appellate court, are not so lacking in potential merit that a reasonable attorney or litigant would necessarily have recognized their frivolousness"].) The trial court here took Judge Meiers's prior decision as one piece of evidence that Thompson's claims were tenable. The court did not err in doing so.[5]

**E.     The Trial Court Did Not Err by Finding a Reasonable Attorney Could Have Viewed Plaintiffs' Actions as Illegal Activity**

Finally, plaintiffs contend their rental of a portion of their apartment was only a regulatory violation, not an unlawful purpose sufficient to sustain an unlawful detainer action. Once again, plaintiffs ignore the trial court's reasoning in rejecting this argument in its statement of decision. The court found that an attorney could reasonably argue that plaintiffs' actions constituted illegal vacation renting, not merely unlicensed home-sharing. Plaintiffs do not challenge this conclusion, which is based on the court's factual findings regarding the layout of the apartment and the portion of it rented to Airbnb tenants. The court also noted that in *Chen v. Kraft*, *supra*, 243 Cal.App.4th Supp. 13, the appellate division of the Los Angeles County Superior Court held that the sublease of a portion of an apartment on Airbnb contrary to municipal law could indeed

---

[5] Plaintiffs make a similar argument regarding the trial court's reliance on *Chen v. Kraft* (2016) 243 Cal.App.4th Supp. 13 that fails for the same reason. In *Chen*, the court held that renting a portion of an apartment on Airbnb in violation of municipal law could constitute illegal activity in an unlawful detainer action. (*Id*. at p. Supp. 21.) The trial court reasoned that the existence of this case showed that Thompson had a tenable basis for seeking to evict plaintiffs.

constitute an illegal purpose in an unlawful detainer action.  (*Id.* at p. Supp. 21.)  The trial court stated that "[d]uring closing arguments, plaintiffs' counsel argued the *Chen v. Kraft* case was wrongly decided, but that does not matter here.  The fact that there is a published appellate division opinion standing for the proposition shows that the argument is at least tenable." Plaintiffs have failed to demonstrate any error in this reasoning.

## DISPOSITION

The judgment is affirmed.  The parties are to bear their own costs on appeal.

NOT TO BE PUBLISHED


WEINGART, J.


We concur:



ROTHSCHILD, P. J.



M. KIM, J.